PRESTON WOODALL AND WIFE, EMMA C. WOODALL, v. NORTH CARO-
LINA JOINT STOCK LAND BANK OF DURHAM, AND THE FIRST
NATIONAL BANK OF DURHAM, TRUSTEE; CITIZENS BANK AND
TRUST COMPANY, BENSON, N. C., AND EZRA PARKER, TRUSTEE.

(Filed 7 October, 1931.)

**1. Receivers B b—In this case held: appointment of receiver for de-
fendant and refusal to allow defendant to give bond was error.**

The appointment of a receiver is a harsh and extraordinary remedy in
equity intended to prevent the possibility of loss of the rents or profits
from the property of the debtor, and it should not be granted ordinarily
where, by following the statutory provisions allowing the debtor to give
bond, the rights of the creditors can be fully protected, and in this case
the appointment of a permanent receiver for the owners of a five-hundred-
acre farm in a high state of cultivation and the refusal to allow the
owners to give the statutory bond and retain possession is held for
error under the facts and circumstances, C. S., 860, 861, it appearing that
loss would not likely result to the creditors.

**2. Mortgages C e—Agreement in mortgage for receivership under certain
conditions does not affect statutory provisions in regard thereto.**

The appointment of a receiver is an equitable remedy and our statutory
provisions (C. S., 860, 861), enacted before the giving of a deed of trust
upon lands may not be entirely supplanted by a provision in the instru-
ment which gives the mortgagee or trustee the unequivocal right to the
appointment of a receiver in the event of the happening of certain condi-
tions so as to prevent our courts sitting in their equity jurisdiction from
administering the equities to which the mortgagor is entitled under the
facts.

**3. Courts A d—Legal and equitable rights are determined in one action.**

Legal and equitable rights and remedies are now determined in one and
the same action. Const., Art. IV, sec. 1.

APPEAL by plaintiffs from *Cranmer, J.,* at August Term, 1931, of
JOHNSTON. Reversed.

It is agreed by defendants that the following statement of facts by
plaintiff is substantially correct in reference to this controversy:

"This is a civil action instituted in the Superior Court of Johnston
County to restrain the defendant, First National Bank of Durham,
trustee, from selling or attempting to sell the 511 acres of land described
in the complaint, under the powers contained in a certain deed of trust
from plaintiffs to said defendants.

Plaintiffs are now and were in 1926, the owners in fee of certain lands
situate in Johnston County, aggregating 511 acres. Said lands lie upon
both sides of State Highway No. 22, in one compact body, and are
in a high state of cultivation. In 1926, plaintiffs applied for and
obtained a loan from the defendant, North Carolina Joint Stock Land

Bank, in the sum of $25,000, the said land bank's appraisers then placing an estimated value upon said lands of $50,000. This loan was to be repaid upon an amortization plan in thirty-three years, with installments of $875.00 due on 1 April and October of each year. Plaintiffs paid each of the maturing installments, totaling $7,875, until 1 April, 1931, when, owing to agricultural depression, plaintiffs found it inconvenient to pay the installment then due, and made this fact known to the land bank.

There was considerable negotiation, but finally the land bank agreed to defer the 1 April installment until 1 October, 1931, in consideration of the erection by plaintiffs of five tobacco barns upon the mortgaged premises, which barns were necessary to the curing of the tobacco raised upon said lands during 1931. The land bank also agreed to withhold foreclosure until 1 October. Pursuant to said agreement plaintiffs, immediately thereafter, caused to be constructed upon said lands five new tobacco barns at a cost of about $1,500. Plaintiffs then restrained the sale, alleging the aforesaid contract, and upon the hearing Judge Cranmer continued the injunction to the trial upon the ground that an issue of fact was raised, from which ruling no appeal was made by the defendants.

The defendants, land bank and trustee, in their answer and further defense alleged that they were entitled to have a receiver appointed to take charge of the lands and crops by virtue of a certain provision in the deed of trust, which is as follows:

'7. And it is further covenanted that as further security for the payment of the note and all installments thereof, and for the performance of all the terms of said note and on the conditions and covenants of this deed of trust, that the said parties of the first part hereby assign, set over and transfer to the North Carolina Joint Stock Land Bank of Durham, its successors and assigns, all the rents, and income, of said premises herein conveyed for each and every year that any installment or installments of the said note may be unpaid, together with all rights and remedies for enforcing collection of the same; and that upon filing suit, or at any time thereafter, of foreclosure, the North Carolina Joint Stock Land Bank of Durham, its successors and assigns, shall be entitled to have a receiver appointed to take charge of the said premises herein conveyed, together with all the rents, profits, crops and proceeds arising therefrom during such litigation, and to hold the same subject to the order and direction of the court.'

They also alleged that plaintiffs are insolvent and that the lands have greatly depreciated in value and are worth less than the value of the property.

The defendants offered no evidence or supporting affidavits.

The complaint, treated as an affidavit, together with numerous supporting affidavits, clearly show that plaintiffs have made permanent improvements upon said lands since the loan was obtained in the sum of $10,100; that the present value of the land is in excess of the debt to the land bank; that plaintiffs are abundantly solvent and able to respond to judgment; that there is no imminent danger of the loss of the property itself or the rents and profits arising therefrom; that the P. B. Johnson estate, holder of a first lien for more than $6,000 on the crops for fertilizers and advancements, is opposed to a receivership, as shown by affidavit of Wade F. Johnson; that there are three other crop liens aggregating $1,030, the holders of which are not parties to this action; that the proceeds from the sale of the crop will not be more than sufficient to pay the aforesaid crop liens, and the expense of a receivership would work a hardship upon plaintiffs and the holders of said liens without benefiting defendant, land bank, or any one else.

It was alleged in paragraph 8 of the complaint that the Citizens Bank and Trust Company also has a mortgage upon said lands, and in paragraph 9, that said mortgage is a prior lien upon a portion of the 511 acre tract. At the hearing this position was abandoned by plaintiffs, they having been advised that the defendant land bank had a first mortgage on said land; it was also shown that the Citizens Bank had ample security, other than its second mortgage on the 511 acre tract, with which to pay the debt due it.

On 5 August, 1931, Judge F. A. Daniels, in an *ex parte* hearing, without notice to plaintiff, appointed a temporary receiver, and in the order appointing said receiver cited plaintiffs to appear before himself at Chambers in Roxboro, 10th Judicial District, on 10 August, 1931, and show cause why such receivership should not be made permanent. Plaintiffs appeared through counsel on the date mentioned, and upon motion the cause was transferred to Johnston County to be heard by his Honor, E. H. Cranmer, at Chambers on 17 August, 1931. Judge Cranmer heard the reading of the complaint and answer, treated as affidavits, and the numerous supporting affidavits on behalf of plaintiffs. His Honor, Judge Cranmer, found no facts, but upon the allegations in defendant's answer made the receivership permanent."

The following judgment was rendered in the court below:

"This cause comes on to be heard before me, upon the rule to show cause heretofore issued herein by his Honor, F. A. Daniels, why the appointment of H. G. Gray as temporary receiver in the complaint and answer in this action, should not be made permanent, and it appearing for the protection of the interests of the defendants herein and the interests

of the interpleaders, and for the preservation of the property, a receiver-
ship for the said lands and crops is necessary and proper;

It is, now, upon motion of J. S. Patterson, attorney for the North
Carolina Joint Stock Land Bank of Durham; and of Strickland and
Johnson, attorneys for the interpleaders, P. B. Johnson estate, con-
sidered, ordered and adjudged that the appointment of H. G. Gray as
temporary receiver be made permanent and that A. T. Tart be appointed
as a coreceiver of the lands and crops, as mentioned in the answer
herein, pending the final determination of the litigation herein, with
the usual powers and duties of receivers in such cases.

And the said receivers are hereby authorized and instructed to culti-
vate, harvest and market the crops for the year 1931 and to rent or
cultivate the said land until the final determination of this matter,
making and keeping a true and correct account thereof and all expenses
incurred therein, to, out of the proceeds of the sale thereof, apply a
sufficient part of the moneys so received to the cultivation and harvesting
of said crops, and any and all costs and expenses of these proceedings,
retaining the balance in their hands as such receivers to wait the
further orders of this court.

This 17 August, 1931."

The plaintiffs excepted and assigned error to the refusal of the court
below to dissolve the temporary receivership and to the signing of an
order appointing permanent receivers, and appealed to the Supreme
Court.

*Levinson & Sidenberg for plaintiffs.*
*R. P. Reade and J. S. Patterson for defendants.*

CLARKSON, J. C. S., 860, in part, is as follows: "A receiver may be
appointed (1) before judgment, on the application of either party, when
he establishes an apparent right to property which is the subject of the
action and in the possession of an adverse party, and the property or its
rents and profits are in danger of being lost, or materially injured or
impaired; except in cases where judgment upon failure to answer may
be had on application to the court." N. C. Prac. & Proc. (McIntosh),
sec. 887, p. 1002; sec. 888, p. 1003.

C. S., 861: "In all cases where there is an application for the appoint-
ment of a receiver, upon the ground that the property or its rents and
profits are in danger of being lost, or materially injured or impaired, or
that a corporation defendant is insolvent or in imminent danger of
insolvency, and the subject of the action is the recovery of a money de-
mand, the judge before whom the application is made or pending shall
have the discretionary power to refuse the appointment of a receiver if

the party against whom such relief is asked, whether a person, partnership or corporation, tenders to the court an undertaking payable to the adverse party in an amount double the sum demanded by the plaintiff, with at least two sufficient and duly justified sureties, conditioned for the payment of such amount as may be recovered in the action, and summary judgment may be taken upon the undertaking. In the progress of the action the court may in its discretion require additional sureties on such undertaking."

Upon application for a receiver it is proper to allow a defendant to continue in possession of property upon giving a sufficient bond to protect the other claimants. *Frank v. Robinson,* 96 N. C., 28.

Where there is danger of loss of rents and profits, instead of appointing a receiver the court may allow the defendant to execute a bond to secure the rents and profits and such damages as may be adjudged the plaintiff, and require an account to be kept. C. S., 861; *Roper Lumber Co. v. Wallace,* 93 N. C., 22; *Durant v. Crowell,* 97 N. C., 367; *Lewis v. Roper Lumber Co.,* 99 N. C., 11; *Ousby v. Neal,* 99 N. C., 146.

The court erred in directing a receiver to take possession and control of the mines, and machinery for operating the same, without giving the defendant an opportunity to file a bond to secure the payment of any proceeds therefrom, as the court might subsequently direct. *Stith v. Jones,* 101 N. C., 361.

In *Lumber Co. v. Wallace, supra,* at p. 30, we find: "It is against the policy of the law to restrain industries and such enterprises as tend to develop the country and its resources. It ought not to be done, except in extreme cases." *Hurwitz v. Sand Co.,* 189 N. C., 1.

In *Ellington v. Currie,* 193 N. C., at p. 612, it is written: "In 23 R. C. L., part section 3, p. 9, it is said: 'The appointment of a receiver is part of the jurisdiction of equity, and is based on the inadequacy of the remedy at law, being intended to prevent injury to the thing in controversy, and to preserve it, *pendente lite,* for the security of all parties in interest, to be finally disposed of as the court may direct. It is held to be a proceeding *quasi in rem.* . . . The right to the relief must be clearly shown, and also the fact that there is no other safe or expedient remedy.' *Twitty v. Logan,* 80 N. C., p. 69; *Hanna v. Hanna,* 89 N. C., 68; *Thompson v. Pope,* 183 N. C., p. 123."

In Clark on Receivers, Vol. 1 (2d ed.), part section 59, at pp. 67 and 68, the following observations are made: "The appointment of a receiver is ordinarily a harsh remedy because it takes custody of the defendant's property out of his hands on an interlocutory order, before the court has had an opportunity to hear the merits of the case discussed, testimony relative to the merits introduced, and to pass on the final relief prayed for against the defendant. The appointment of a receiver should

only be granted in a clear case. If it is in the power of the court to protect the plaintiff by granting a less drastic remedy than the appointment of a receiver, the court will usually do so. . . . The appointment of a receiver, being a harsh and extraordinary remedy, might in many cases be dispensed with by the defendant giving bond to the plaintiff to protect the plaintiff and to pay to the plaintiff the amount of any judgment plaintiff might secure against the defendant, which judgment might otherwise be made good out of the property if a receiver should be appointed."

The defendants contend that they are entitled to have enforced in their favor the plain unequivocal language contained in section 7 of the mortgage or deed of trust duly executed by the plaintiffs, and providing in certain terms for the appointment of a receiver to take charge of the premises conveyed in the event of foreclosure of the deed of trust or mortgage. We think not under the facts and circumstances of this case.

The appointment of a receiver is a part of the jurisdiction of equity, then again, C. S., 861 was enacted long prior to the deed of trust in controversy, therefore it enters into and becomes a part of the conventions of the parties. *Bateman v. Sterrett, ante,* at p. 61.

In 55 A. L. R., at p. 1028, citing a wealth of authorities, the following principle is stated: "A stipulation pledging the rents and profits and providing a receiver has been generally held insufficient of itself to entitle the mortgagee to the appointment of a receiver, unless further facts justifying such appointment are shown." See 4 A. L. R., pp. 1417, 1418.

The plaintiffs' farm was a going concern. The appointment of a receiver is ordinarily a harsh and extraordinary remedy. The court below has large discretionary powers, yet in view of the statute allowing bond and the facts and circumstances of this case, we think that the plaintiffs should have been allowed to execute such reasonable bond, with sufficient security, as the court may deem proper, payable to the parties affected, conditioned to secure to them such damages as the court may adjudge in their favor upon the determination of the action. In the event of failure to give such bond, the court to make such order or orders in the cause by the appointment of a receiver, or otherwise, as will protect the rights of the parties pending the litigation.

The learned and careful judge in the court below, who tried the case, no doubt considered that the provision in the deed of trust was controlling, but not so (C. S., 861), and the equitable aspect should have been considered. Legal and equitable rights are now determined in one and the same action. Const., Art. IV, sec. 1. For the reasons given, the judgment of the court below is

Reversed.