NEWMAN MACHINE COMPANY, INC. v. GEORGE F. NEWMAN, JR., TRUSTEE

No. 1

(Filed 12 March 1969)

**1. Pleadings § 19— demurrer — sufficiency of pleadings**

A demurrer tests the sufficiency of a pleading, admitting, for that purpose, the truth of factual averments well stated and such relevant inferences of fact as may be deduced therefrom.

**2. Pleadings § 19— demurrer — liberal construction of pleadings**

When pleadings are challenged by demurrer, they are to be liberally construed with a view to substantial justice between the parties. G.S. 1-127, G.S. 1-151.

**3. Pleadings § 19— demurrer**

A demurrer admits the facts alleged but not the pleader's legal conclusions.

**4. Pleadings § 19— demurrer — fatally defective complaint**

A complaint must be fatally defective before it will be rejected as insufficient.

**5. Declaratory Judgment Act § 2— proceedings — sufficiency of complaint**

If a complaint sets forth a genuine controversy justiciable under the Declaratory Judgment Act, it is not demurrable even though plaintiff may not be entitled to prevail on the facts alleged in the complaint, since the court is not concerned with whether plaintiff's position is right or wrong but with whether he is entitled to a declaration of rights with respect to the matters alleged.

**6. Quieting Title § 1; Property § 2— personal property — equitable remedy to quiet title**

In this State a cause of action to quiet title or to remove cloud on title to personal property may be maintained in equity where, due to exceptional circumstances, there is no adequate remedy at law.

**7. Quieting Title § 2—** **action to quiet title to personalty — sufficiency of pleadings**

    Complaint properly states a cause of action to quiet title to shares of corporate stock where there are allegations that (1) plaintiff corporation purchased shares of its stock from defendant who owned the stock individually and as trustee for his minor children, (2) defendant through his attorney now asserts that the consideration paid to him, individually and as trustee, was grossly inadequate and that he is entitled to disaffirm and rescind the transactions or to sue for damages, (3) defendant's repeated threats and demands have seriously jeopardized plaintiff's corporate existence and affected plaintiff in the conduct of its business, (4) the president of plaintiff corporation, who will be a material witness in any litigation, is 70 years old and his evidence should be preserved, and (5) defendant's threats of legal action constitute a cloud on plaintiff's title to the shares of stock.

**8. Quieting Title § 1—** **quieting title to realty — nature of remedy**

    The statutory action to quiet title to realty was designed to avoid some of the limitations imposed upon the remedies formerly embraced by a bill of peace or a bill *quia timet,* and to establish an easy method of quieting titles of land against adverse claims. G.S. 41-10.

ON *certiorari* to review decision of the Court of Appeals reported in 2 N.C. App. 491, 163 S.E. 2d 279.

The hearing below was on demurrer. The complaint contains fifty-two numbered paragraphs. When stripped of nonessentials, the allegations may be summarized as follows:

1.   Plaintiff is a North Carolina corporation with its principal place of business in Greensboro, and defendant is a citizen and resident of Greensboro, North Carolina.

2.   George F. Newman, Jr., was a member of the Board of Directors of Newman Machine Company, Inc., from January 1937 until December 31, 1963; vice-president and manager of its Sales Department from January 1937 until May 1948; president of the Company from May 7, 1948, until December 31, 1960; and vice-president of the Company in 1961, 1962 and 1963 until he voluntarily resigned effective December 31, 1963.

3.   George F. Newman, Jr., owned 64.77% of all the issued and outstanding shares of capital stock of plaintiff corporation. In March 1950 he made a gift of certain of his shares to himself as trustee for his children. Thereafter and until February 6, 1959, he owned individually 53.299% of the capital stock and owned *as trustee for his children* 11.477% of said shares. In addition, he also owned individually 65% of the outstanding shares of capital stock of three affiliated corporations.

4. In the trust instrument of March 1950 by which George F. Newman, Jr., gave 11.477% of the outstanding shares of stock in Newman Machine Company, Inc., to himself as trustee for his children, he was authorized "to manage, convert, sell, assign, alter, invest and reinvest, lease and otherwise deal with said trust properties and use the proceeds from the same as he, in his discretion, shall deem to be for the best interest for the trust estate, to the same extent that he might do if he were the individual owner of the trust estate." The declaration of trust also provided that "the trust is to be administered free of the control and direction of and without accounting to or reporting to any court."

5. On February 6, 1959, George F. Newman, Jr., sold to the plaintiff corporation at $135.25 per share all of its shares of stock which he owned. This included both the 53.299% he owned individually and the 11.477% he owned as trustee. The total purchase price was $785,802.50.

6. At all times prior to December 31, 1960, George F. Newman, Jr., had access to all the financial records of plaintiff corporation, was in position to know the fair market value of its assets, business, and business potential so that he knew the fair market value of the corporate stock when he sold it to the plaintiff on February 6, 1959.

7. As a part of the total transaction the plaintiff and George F. Newman, Jr., entered into an employment contract dated February 7, 1959, under the terms of which it was agreed that the said Newman should continue to serve plaintiff corporation as its president at a salary of $100,000.00 per year for the years 1959 and 1960 and at a salary of $50,000.00 per year for the years 1961, 1962, 1963 and 1964. The said Newman terminated this contract voluntarily as of December 31, 1963, and, at his request, served plaintiff corporation in a very limited capacity during 1964 and 1965.

8. On February 5, 1965, defendant notified plaintiff by letter that defendant's attorneys were investigating the transaction involving the sale of the stock. On August 27, 1965, defendant requested copies of plaintiff's audit report for the years 1957, 1958, 1959 and 1960; and on November 17, 1965, defendant's attorneys examined copies of said audit reports at plaintiff's offices. Thereafter, on March 24, 1966, defendant's attorneys wrote plaintiff the following letter:

"Mr. W. M. York, Sr.,
President,
Newman Machine Company,
507 Jackson Street,
Greensboro, North Carolina.

Re: George F. Newman, Jr., Individually and as
     Trustee, vs. Newman Machine Company, et al

Dear Mr. York:

We have completed an analysis of our notes on the financial information which you permitted us to examine on November 17, 1965, and we have also examined certain public records in the Guilford County Courthouse. In addition, Mr. Newman has delivered to us, and we have studied, all documents in his possession relating to the transactions in early 1959 under which Newman Machine Company, its affiliates, and members of your family acquired all interests of Mr. Newman in these companies and all interests of Mr. Newman, as Trustee for his minor children, in these companies and in the land and buildings in which these companies conducted their operations. Based upon the foregoing information, we have concluded that, in our opinion, the consideration paid to Mr. Newman, individually and as Trustee, for the properties acquired by Newman Machine Company, et al, was grossly inadequate and represented only a minor fraction of the fair market value of the properties. We have so advised Mr. Newman.

In view of the facts and circumstances attendant upon and inherent in the transactions, including the financial and other information in documentary form and the facts as related to us by Mr. Newman, we have further concluded that, in our opinion, Mr. Newman, individually and as Trustee for his minor children, has the legal right to either disaffirm and rescind the transactions or to sue for damages, and we have advised Mr. Newman accordingly. Moreover, we are of the opinion that Mr. Newman, in his capacity as Trustee for his minor children, is legally obligated by reason of his duty as a fiduciary to assert his claim as Trustee and that his failure to do so would amount to a breach of his obligations as a fiduciary, for which he could later be held personally liable. We have stated this opinion to Mr. Newman.

Mr. Newman, individually and as Trustee, has requested that we take appropriate and prompt action to enforce his

rights arising out of the transactions mentioned above. Before commencing legal action or actions for the enforcement of these rights we will be glad to discuss, without prejudice, the entire matter with you or your attorneys, preferably the latter, if you wish to explore the possibilities of a mutually satisfactory compromise settlement of the claims of our client. Please let us hear from you within ten days.

> Yours very truly,
> JORDAN, WRIGHT, HENSON & NICHOLS
> By: Welch Jordan

WJ;c

cc: Mr. George F. Newman, Jr."

9. Defendant, through his attorneys, continued to make demands on plaintiff and to threaten legal action against plaintiff, including threat of receivership. These threats have seriously jeopardized plaintiff's corporate existence, hampered long-range planning, and seriously affected plaintiff in the conduct of its business affairs.

10. William M. York, Sr., President of plaintiff corporation, is 70 years of age and will be a material witness in any litigation. His evidence should be preserved.

11. A real controversy exists between plaintiff and defendant. The threats constitute a cloud on the title to the shares of stock purchased by plaintiff from George F. Newman, Jr., Trustee, and this action is brought for the purpose of settling the controversy and removing the cloud on plaintiff's title to the stock in question. The sale and purchase of said stock was an arm's-length transaction with both parties having full knowledge of the facts. Plaintiff paid fair market value for the shares of stock and obtained a good title to them. Defendant has no further rights arising out of said transaction, and plaintiff has no further obligations to the defendant by reason of it.

12. Plaintiff prays the court for judgment declaring that it has good title to the 11.477% of its shares of stock purchased from defendant trustee and for costs of the action.

Defendant's demurrer was overruled by the trial judge. *Certiorari* was allowed and the Court of Appeals reversed, sustaining the demurrer. We allowed *certiorari* to review decision of that Court.

*Charles T. Hagan, Jr., and McNeill Smith, Attorneys for the plaintiff appellant.*

*McLendon, Brim, Brooks, Pierce & Daniels, by Hubert Humphrey, Attorneys for defendant appellee.*

HUSKINS, J.

**[1-5]**     A demurrer tests the sufficiency of a pleading, admitting, for that purpose, the truth of factual averments well stated and such relevant inferences of fact as may be deduced therefrom. When pleadings are thus challenged they are to be liberally construed with a view to substantial justice between the parties. G.S. 1-127; G.S. 1-151; *McKinney v. High Point,* 237 N.C. 66, 74 S.E. 2d 440 (1953). A demurrer admits the facts alleged but not the pleader's legal conclusions. *Gillispie v. Service Stores,* 258 N.C. 487, 128 S.E. 2d 762 (1963). A complaint must be fatally defective before it will be rejected as insufficient. *Woody v. Pickelsimer,* 248 N.C. 599, 104 S.E. 2d 273 (1958). Demurrers in declaratory judgment actions are controlled by the same principles applicable in other cases. Even so, it is rarely an appropriate pleading to a petition for declaratory judgment. If the complaint sets forth a genuine controversy justiciable under the Declaratory Judgment Act, it is not demurrable even though plaintiff may not be entitled to prevail on the facts alleged in the complaint. This is so because the Court is not concerned with whether plaintiff's position is right or wrong but with whether he is entitled to a declaration of rights with respect to the matters alleged. 22 Am. Jur. 2d, Declaratory Judgments, § 91; *Walker v. Charlotte,* 268 N.C. 345, 150 S.E. 2d 493 (1966); *Woodard v. Carteret County,* 270 N.C. 55, 153 S.E. 2d 809 (1967).

The complaint and demurrer present these questions:

(1)   Does the complaint state a cause of action justiciable under the Declaratory Judgment Act?

(2)   Does the complaint state a cause of action in equity to quiet title to personal property?

Plaintiff contends for an affirmative answer to both questions, while defendant argues that an action to quiet title to personalty cannot be maintained in this jurisdiction because there is statutory provision for such suits only with respect to real property. G.S. 41-10. Defendant further contends that the type of dispute pictured by the complaint does not qualify for consideration under the Declaratory Judgment Act because (a) a genuine controversy does not exist, (b) the action does not include all necessary parties, (c) the action involves primarily issues of fact rather than questions of law, and (d) the object of the action is "to bag" in advance an impending lawsuit by becoming plaintiff now so as to avoid becoming defendant later.

The excellent briefs of the parties are largely devoted to dis-

cussions of whether the complaint states a cause of action justiciable under the Declaratory Judgment Act. We find it unnecessary to decide the first question, however, in view of the conclusion we have reached on the second.

**[6, 7]**    We hold that the complaint states a cause of action to remove cloud and quiet title to personalty and that such action may be maintained in this State. Since the courts generally apply the same principles when title to personalty is involved as they do when title to land is clouded, McClintock, Principles of Equity, Sec. 197 (2d ed. 1948), brief reference to some of the requirements in equity suits to remove cloud and quiet title to realty prior to enactment of G.S. 41-10 is helpful to an understanding of the question before us.

Under the old equity practice, "[a] bill *quia timet* was intended to prevent future litigation, by removing existing causes which might affect the plaintiff's title. If one in possession of land under a legal title knew that another was claiming an interest in the land under a title adverse to him, there was no adequate remedy at law for such occupant to test the validity of such claim. Being in possession, he could not sue at law, and the adverse claimant would not sue, so that the adverse claim might be asserted at some future time when the evidence to rebut it might be lost, or at any rate the existence of such claim cast a cloud upon his title which would affect its value. His remedy was a bill in equity against the adverse claimant to have the cloud removed by a decree of the court and thereby quiet his title." McIntosh, N. C. Practice and Procedure in Civil Cases § 986 (1929); *Holland v. Challen,* 110 U.S. 15, 3 S. Ct. 495, 28 L. Ed. 52 (1883).

It is stated in *Hardware Co. v. Cotton Co.,* 188 N.C. 442 at 445, 124 S.E. 756 at 758 (1924), that " '[a] bill *quia timet* is in the nature of a writ of prevention, and is entertained as a measure of precaution, justice, and to forestall wrongs or anticipated mischiefs, as where a guardian or other trustee is squandering an estate, or where one in possession of property which another unjustly claims is likely to lose the evidence of his title by delay in asserting and testing the hostile claim. *Bailey v. Briggs,* 56 N.Y. 407, 415.' "

Prior to 1893, in equity suits to remove cloud or quiet title to realty plaintiff was required to allege and show: (1) that he had no adequate remedy at law, *Byerly v. Humphrey,* 95 N.C. 151 (1886); (2) that he was in rightful possession of the land in question, *Peacock v. Stott,* 104 N.C. 154, 10 S.E. 456 (1889), *McNamee v. Alexander,* 109 N.C. 242, 13 S.E. 777 (1891); and (3) that the defendant's adverse claim was such as to affect plaintiff's title injuriously,

*Murray v. Hazell,* 99 N.C. 168, 5 S.E. 428 (1888). In *Busbee v. Macy,* 85 N.C. 329 (1881), plaintiff sought to remove a cloud upon the title to land alleging that a deed under which defendant claimed was void on its face by reason of the uncertain description of the land therein contained. The court held that since the illegality of defendant's deed appeared upon its face, a court of equity should dismiss the action and decline to declare an instrument to be a void deed which upon its face is no deed at all. In *Busbee v. Lewis,* 85 N.C. 332 (1881), plaintiff sought to remove a cloud upon his title and was denied equitable relief because a valid legal objection was apparent on the face of the record. ". . . [A] court of equity will not take jurisdiction of an action to remove a claim upon the ground of its being a cloud upon the title of another, when the claim is based upon a deed alleged in the complaint to be void upon its face, since, if it really be so, the party has always at hand a certain defense against the deed, whenever it may be urged against him."

**[8]**   Because the General Assembly considered the two *Busbee* decisions, *supra,* an inconvenient or unjust application of the equitable doctrines involved, it enacted Chapter 6, Public Laws of 1893, now codified as G.S. 41-10, providing, *inter alia,* that "[a]n action may be brought by any person against another who claims an estate or interest in real property adverse to him for the purpose of determining such adverse claims. . . ." *Rumbo v. Manufacturing Co.,* 129 N.C. 9, 39 S.E. 581 (1901). That enactment was designed to avoid some of the limitations imposed upon the remedies formerly embraced by a bill of peace or a bill *quia timet,* and to establish an easy method of quieting titles of land against adverse claims. *Wells v. Clayton,* 236 N.C. 102, 72 S.E. 2d 16 (1952).

Since we have no statute regarding suits in equity to remove cloud or quiet title to personalty, we apply to such suits the same principles which obtained prior to enactment of G.S. 41-10 when title to land was involved.

Although such suits were usually brought only in cases involving real property, "the generally accepted view is that a bill to quiet the title or to remove a cloud on the title to personal property may be maintained in equity, in the absence of statutory authorization, where, by reason of exceptional circumstances, there is no adequate remedy at law." Annot., 105 A.L.R. 291 (1936). In *Loggie v. Chandler,* 95 Maine 220, 49 A. 1059, it was held that a cloud upon the title to personal property in the form of a recorded chattel mortgage could not be removed; but Pomeroy says ". . . there seems no good reason for thus restricting the jurisdiction, and the instances

are not infrequent where it has been exercised, in cases of void re-corded chattel mortgages, spurious issues of shares of stock, etc." 5 Pomeroy, Equity Jurisprudence § 2151 (4th ed. 1919). To like effect is *Thompson v. Emmett Irr. Dist.,* 227 F. 560, (9th Cir. 1915), where plaintiff, a purchaser of bonds issued by an irrigation district, al-leged that defendant had defaulted in the payment of interest on all of the bonds on the ground that some of the bonds, without desig-nating such bonds by number or otherwise, had been sold without consideration. Defendant demurred and moved to dismiss. Held: The allegations of the bill state a case for the removal of a cloud upon the title to personal property and such a case is within the jurisdiction of a court of equity. Accord, *Sherman v. Fitch,* 98 Mass. 59 (1867); *Magnuson v. Clithero,* 101 Wis. 551, 77 N.W. 882 (1899); *Voss v. Murray,* 50 Ohio St. 19, 32 N.E. 1112 (1893).

In *Dittmar v. Alamo Nat. Co.,* 91 S.W. 2d 781 (Tex. Civ. App. 1936), defendants by cross action sought to have their title quieted to certain corporate stock allegedly purchased by defendants from plaintiff. There, as here, it was contended that there was no such action as one to quiet title or remove cloud from title to personal property. Held: "There seems to be no good reason for so restrict-ing the remedy of an action to quiet title. This is especially true in Texas, where the distinctions between law and equity do not ob-tain. . . . We see no reason why in this state the owner of per-sonalty, in possession, should not be permitted to maintain a suit to quiet his title as against an adverse claimant." It will be noted that in North Carolina, as in Texas, the old technical distinctions be-tween actions at law and suits in equity have been abolished. G.S. 1-9; *In Re Estate of Smith,* 200 N.C. 272, 156 S.E. 494 (1931); *Woodall v. Bank,* 201 N.C. 428, 160 S.E. 475 (1931).

In *Ellis v. Dixie Highway Special Road & Bridge Dist.,* 103 Fla. 795, 138 So. 374 (1931), plaintiff sought to be adjudged owner and holder of certain highway district bonds which defendant claimed had been stolen. Plaintiff could not negotiate the bonds under rules of the New York Stock Exchange until title was established. Held: "Suits in equity to quiet title to personalty are infrequently brought, but a court of equity will give relief in respect of personalty and quiet title thereto when, owing to exceptional circumstances, there is no adequate remedy at law."

In *Earle v. Maxwell,* 86 S.C. 1, 67 S.E. 962 (1910), the Court said: "While some authorities hold otherwise, we think there can be no doubt that a complaint to remove a cloud on the title to per-sonal property may be maintained. . . . Any distinction between

real estate and personal property in this respect must be purely artificial and tend to hinder the practical administration of justice."

**[6, 7]**　Even though there is no statute in North Carolina authorizing suits to quiet title to personalty, we adhere to the general rule that such suits may be maintained in equity where, due to exceptional circumstances, there is no adequate remedy at law. Here, plaintiff is in possession of the stock it purchased from defendant trustee, and defendant is claiming an interest in it adverse to plaintiff. Being in possession plaintiff cannot sue at law, and defendant will not sue — at least he has not done so during almost two years of threats and demands. His adverse claim may be asserted in court at some future time when plaintiff's evidence to rebut it may be lost. The existence of such a claim casts a cloud upon plaintiff's title to the stock and may adversely affect its value. Under these circumstances plaintiff is entitled to invoke the equitable assistance of the court to remove this cloud and quiet the title to ownership of said stock when defendant, for whatever reasons of his own, continues to threaten but refuses to act. With the ever increasing importance of personal property in the business world of today, especially stocks, bonds, and other intangibles, there is no sound reason why this equitable remedy should not be available to quiet title to personalty as well as realty.

For the reasons stated the decision of the Court of Appeals sustaining the demurrer is reversed. Let the Court of Appeals so certify it to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.