GASTON BOARD OF REALTORS, INC., A NORTH CAROLINA CORPORATION v. CHARLES A. HARRISON

No. 514A83

(Filed 5 June 1984)

1. **Declaratory Judgment Act § 3— declaratory judgment—necessity for actual controversy**

    Courts have jurisdiction to render declaratory judgments only when the pleadings and evidence disclose the existence of an actual controversy between parties having adverse interests in the matter in dispute.

2. **Declaratory Judgment Act § 3— declaratory judgment—necessity for unavoidable litigation**

    Although it is not necessary that one party have an actual right of action against another to satisfy the jurisdictional requirement of an actual controversy, it is necessary that litigation appear unavoidable, and mere apprehension or the mere threat of an action or a suit is not enough.

3. **Declaratory Judgment Act § 4— declaratory judgment—absence of justiciable controversy**

    Litigation between the parties did not appear unavoidable and there was thus no justiciable controversy between the parties sufficient to invoke the

Gaston Bd. of Realtors v. Harrison

court's jurisdiction under the Declaratory Judgment Act to determine whether the decision of plaintiff Board of Realtors to expel defendant, one of its members, until he repaid a deposit to prospective home buyers was lawful where defendant, in seeking a rehearing, stated in a letter that he would take whatever actions were necessary to protect himself; a provision of plaintiff's Code of Ethics stating that "each member by becoming and remaining a member, agrees not to seek review in any court of law" diminished the likelihood of defendant's taking legal action against plaintiff; and an interpleader action filed by defendant against the depositors, in which defendant paid into the office of the Clerk of Court the amount of the controversial deposit, will potentially eliminate the conflict between plaintiff and defendant.

**4. Declaratory Judgment Act § 4— declaratory judgment—contract as basis for jurisdiction**

Assuming that plaintiff Board of Realtor's Code of Ethics and bylaws constitute a contract with defendant member, such a contract cannot form the basis for jurisdiction in an action for a declaratory judgment absent an actual controversy about legal rights and liabilities arising under the contract.

APPEAL of right pursuant to G.S. 7A-30(2) from a decision of a divided panel of the Court of Appeals, 64 N.C. App. 29, 306 S.E. 2d 809 (1983), which affirmed a judgment entered by *Owens, Judge,* on January 28, 1982, in Superior Court, GASTON County. Heard in the Supreme Court February 13, 1984.

*Mullen, Holland & Cooper, P.A., by Graham C. Mullen and William E. Moore, Jr., for the plaintiff appellee.*

*Lloyd T. Kelso, P.A., by Lloyd T. Kelso for the defendant appellant.*

*Smith, Moore, Smith, Schell & Hunter, by Richmond G. Bernhardt, Jr. and Peter J. Covington, amicus curiae for the North Carolina Association of Realtors, Inc.*

*Rufus L. Edmisten, Attorney General, by Harry H. Harkins, Jr., Assistant Attorney General, amicus curiae for the North Carolina Real Estate Commission.*

MITCHELL, Justice.

This appeal arises out of an action taken under the Declaratory Judgment Act, G.S. 1-253 to 1-267, to determine whether the plaintiff, the Gaston County Board of Realtors, Inc., conducted lawful disciplinary proceedings against one of its members, the defendant, Charles A. Harrison. The trial court

found that the proceedings were lawful and in accordance with due process. A divided panel of the Court of Appeals affirmed. We find no actual controversy between the parties sufficient to invoke a court's jurisdiction under the Declaratory Judgment Act. Therefore, we reverse the Court of Appeals.

The Gaston Board of Realtors, Inc. [hereinafter "Board"] is a voluntary trade organization consisting of licensed real estate brokers who are also members of the state and national associations of realtors. The defendant Harrison was a member of the plaintiff Board until Larry and Phyllis Hamrick, prospective home buyers, filed a complaint against him with the Board. They contended that he improperly kept a $2,090.00 deposit that should have been returned to them. The Board arranged for a hearing before a hearing panel consisting of five members of the Board's Professional Standards Committee to determine whether Harrison had violated any Board rules. The panel made findings of fact and concluded that the defendant had violated certain portions of the organization's Code of Ethics. The hearing panel recommended that the defendant Harrison be expelled from membership in the organization until "such time as he makes full restitution to the Complainants, . . . at which time he may be automatically reinstated." In a letter to the plaintiff's Executive Secretary, the defendant petitioned for a rehearing and stated in the letter "Be advised that I plan to take such actions as are necessary to protect myself and General Homes Corporation from harm by the actions of individuals in this matter."

On September 10, 1979, the plaintiff's directors met and adopted the hearing panel's decision but ruled that the defendant would be *suspended* pending the outcome of a judicial determination of whether the plaintiff had violated the defendant's rights. The plaintiff Board subsequently filed the complaint in this action, seeking a declaratory judgment that its disciplinary proceedings were in accordance with due process. In the complaint the plaintiff stated that an actual controversy exists between the parties in that the defendant Harrison "has threatened to sue the plaintiff, its officers, directors, members, or some of them for damages in the event the plaintiff expels the defendant."

Before trial the Board made a motion for summary judgment. Harrison opposed the motion and moved to dismiss the action on

the ground that there was no actual justiciable controversy between the parties sufficient to invoke the court's jurisdiction. The trial court denied the motions of both parties.

On January 25, 1982, the trial court heard evidence and ruled that the Board had properly conducted its disciplinary proceedings against Harrison. The trial court found as a fact that the plaintiff Board had brought the action for declaratory judgment "because the defendant had threatened action against the people involved in the disciplinary process." The trial court, in a conclusion of law, concluded that a controversy existed between the parties which was justiciable under the Declaratory Judgment Act. The defendant appealed to the North Carolina Court of Appeals.

The Court of Appeals held that the trial court properly refused to dismiss the action for lack of a justiciable controversy. The majority held the controversy between the parties to be real and present, and found that the defendant's threat to take action was substantial evidence that litigation appeared unavoidable. The majority held that the procedure conducted by the Board was lawful and comported with due process. Judge Johnson, in dissent, expressed doubt about the sufficiency of the controversy to confer jurisdiction upon the courts and concluded that the trial court failed to conduct a proper judicial review of the Board's decision.

[1]  We need not consider the merits of this action because we conclude there was no actual controversy sufficient to invoke the jurisdiction of the courts under our Declaratory Judgment Act. The authority of our courts to render declaratory judgments is set forth in G.S. 1-253:

Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree.

While the statute does not expressly so provide, this Court has held on a number of occasions that Courts have jurisdiction to render declaratory judgments only when the pleadings and evidence disclose the existence of an actual controversy between parties having adverse interests in the matter in dispute. *Adams v. North Carolina Dept. of Natural and Economic Resources*, 295 N.C. 683, 249 S.E. 2d 402 (1978); *North Carolina Consumers Power, Inc. v. Duke Power Co.*, 285 N.C. 434, 206 S.E. 2d 178 (1974); *Lide v. Mears*, 231 N.C. 111, 56 S.E. 2d 404 (1949).

We have described an actual controversy as a "jurisdictional prerequisite" for a proceeding under the Declaratory Judgment Act, the purpose of which is to "preserve inviolate the ancient and sound juridic concept that the inherent function of judicial tribunals is to adjudicate genuine controversies between antagonistic litigants with respect to their rights, status or other legal relations." *Adams v. North Carolina Dept. of Natural and Economic Resources*, 295 N.C. at 703, 249 S.E. 2d at 414 (quoting *Lide v. Mears*, 231 N.C. at 118, 56 S.E. 2d at 409). In *Town of Tryon v. Duke Power Co.*, 222 N.C. 200, 22 S.E. 2d 450 (1942) this Court acknowledged that, although the actual controversy rule may be difficult to apply in some cases and the definition of a "controversy" must depend on the facts of each case, "[a] mere difference of opinion between the parties" does not constitute a controversy within the meaning of the Declaratory Judgment Act. *Id.* at 205, 22 S.E. 2d at 453.

[2]  Although it is not necessary that one party have an actual right of action against another to satisfy the jurisdictional requirement of an actual controversy, it is necessary that litigation appear unavoidable. *North Carolina Consumers Power, Inc. v. Duke Power Co.*, 285 N.C. 434, 206 S.E. 2d 178. Mere apprehension or the mere threat of an action or a suit is not enough. *Newman Machine Co. v. Newman*, 2 N.C. App. 491, 163 S.E. 2d 279 (1968), *rev'd on other grounds*, 275 N.C. 189, 166 S.E. 2d 63 (1969). Thus the Declaratory Judgment Act does not "require the court to give a purely advisory opinion which the parties might, so to speak, put on ice to be used if and when occasion might arise." *Town of Tryon v. Power Co.*, 222 N.C. at 204, 22 S.E. 2d at 453 (1942).

When the record shows that there is no basis for declaratory relief, or the complaint does not allege an actual, genuine existing

controversy, a motion for dismissal under G.S. 1A-1, Rule 12(b)(6) will be granted. *Kirkman v. Kirkman*, 42 N.C. App. 173, 256 S.E. 2d 264, *cert. denied*, 298 N.C. 297, 259 S.E. 2d 300 (1979). Having examined the evidence and pleadings in the case at hand to determine whether there is an actual controversy sufficient to confer jurisdiction under the Declaratory Judgment Act, we hold that there is not. The Court of Appeals erred in affirming the trial court's exercise of jurisdiction.

The plaintiff Board submits that Harrison has shown by his actions and words that litigation will inevitably result if a declaratory judgment is not rendered. The Board and the majority opinion in the Court of Appeals point to evidence that Harrison stated in a letter to the Board that he would "take such actions as are necessary to protect myself . . . from harm by the actions of individuals involved in this matter." The Court of Appeals also found the controversy to be real and present because of the plaintiff Board's stated intention to expel the defendant Harrison as soon as the legality of the Board's proceeding is established.

In addition, the Board urges this Court to consider its action as one seeking construction of a contract under G.S. 1-254. That provision of the Declaratory Judgment Act establishes the right to seek declaratory judgments concerning the construction of contracts and written instruments. The Board maintains that a contract between the Board and its members is formed by the Code of Ethics and the bylaws of the group. *See Bright Belt Warehouse Association v. Tobacco Planters Warehouse, Inc.,* 231 N.C. 142, 56 S.E. 2d 391 (1949).

[3] After a review of the evidence and the pleadings of the parties, we conclude that litigation between the parties does not appear unavoidable and that the controversy between them is not therefore actual, genuine and existing. It is true that the defendant in seeking a rehearing before the Board stated in a letter that he would take whatever actions necessary to protect himself. That statement does not in and of itself point to unavoidable litigation and the existence of an actual controversy. Although the defendant did not specify what action he intended to take to protect his interests, he never mentioned filing a lawsuit. Even if the defendant had directly threatened to sue the Board, a mere

threat to sue is not enough to establish an actual controversy. *Newman Machine Co. v. Newman,* 2 N.C. App. 491, 163 S.E. 2d 279 (1968), *rev'd on other grounds,* 275 N.C. 189, 166 S.E. 2d 63 (1969).

In fact when questioned at trial about the statement in his letter, the defendant Harrison stated that he had indeed intended to take action to protect himself,

> and that's what I'm doing right now on this witness stand. I have not sued them but I'm certainly not going to let them walk over me if I can help it. I have no reason to sue them and the Code of Ethics prohibits me from doing so. The only thing I wanted was a fair hearing.

As indicated in Harrison's testimony, the plaintiff's Code of Ethics, Section 20(i), states that "[a] decision of the Directors is final and each member by becoming and remaining a member, agrees not to seek review in any court of law." Since both Harrison and the Board were aware of the Code provision, and since Harrison sought to retain membership in the organization, the provision undoubtedly diminished the likelihood of Harrison's taking legal action against the Board.

In fact, the conflict between the Board and Harrison may never ripen into an actual controversy, since there is at least a likelihood that the settlement of the dispute between Harrison and the Hamricks may also settle the differences between Harrison and the Board. The record shows that Harrison, prior to the trial court hearing in this case, filed an interpleader action against the Hamricks involving the possible breach of his contract with the couple. He deposited the Hamricks' deposit with the Clerk of Superior Court, Gaston County, to await the outcome of the action. If the interpleader action results in the return of the $2,090.00 to the Hamricks, it is probable that the condition set by the Board for reinstatement of the defendant — restitution of the deposit — will be satisfied. Since Harrison seeks reinstatement, such a result potentially would eliminate the conflict between him and the Board.

[4]  The Board is not aided by its contention that jurisdiction exists by virtue of the "contract" between the parties. In *Bright Belt Warehouse Association v. Tobacco Planters Warehouse, Inc.,*

231 N.C. 142, 56 S.E. 2d 391 (1949), this Court held that the charter and bylaws of an association may constitute a contract between the organization and its members wherein members are deemed to have consented to all reasonable regulations and rules of the organization. Assuming *arguendo* that the plaintiff Board's Code of Ethics and bylaws do constitute a contract with the defendant, such a contract cannot form the basis for jurisdiction in an action for a declaratory judgment absent *an actual controversy* about legal rights and liabilities *arising under the contract. See Nationwide Mutual Insurance Co. v. Roberts,* 261 N.C. 285, 134 S.E. 2d 654 (1964).

Neither party in this case has questioned the validity or interpretation of the contract or its provisions. Nor has either party raised questions about rights or liabilities under the contract. Instead the Board has sought a determination that its decision to expel the defendant was lawful and that the decision if carried out will not give rise to a cause of action in the defendant. Since there is no controversy about rights and duties under the contract, there is no basis for declaratory judgment under this theory. Although the Board has shown reasonable caution in seeking to have its procedure declared sound before taking the serious step of expelling the defendant, the Declaratory Judgment Act, in the words of Justice Ervin, "does not license litigants to fish in judicial ponds for legal advice." *Lide v. Mears,* 231 N.C. at 117, 56 S.E. 2d at 409 (1949).

We hold that the Court of Appeals erred in affirming the trial court's refusal to dismiss the plaintiff Board's action pursuant to Rule 12(b)(6). The decision of the Court of Appeals is reversed, and this case is remanded to that Court for its remand to the Superior Court, Gaston County, for further proceedings consistent with this opinion.

Reversed and remanded.