Johnson's Landing Homeowners Ass'n, Inc. v. Hotwire Commc'ns, LLC, 2018
NCBC 112.

| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| WAKE COUNTY | 18 CVS 6023 |

| | |
|---|---|
| JOHNSON'S LANDING HOMEOWNERS ASSOCIATION, INC., | |
| Plaintiff, | |
| v. | |
| HOTWIRE COMMUNICATIONS, LLC; HOTWIRE COMMUNICATIONS OF NORTH CAROLINA, LIMITED PARTNERSHIP; CAPITOL INFRASTRUCTURE, LLC; SMARTRESORT CO., LLC d/b/a BEYOND COMMUNICATIONS; and EMBARQ SOLUTIONS, INC. n/k/a CENTURYLINK SALES SOLUTIONS, INC., | **ORDER AND OPINION ON DEFENDANTS' MOTION TO DISMISS** |
| Defendants. | |

1. This suit arises from a dispute between a residential community and its telecommunications services provider. Plaintiff Johnson's Landing Homeowners Association, Inc. ("Association") alleges that the community's residents have long received substandard services from Defendants Hotwire Communications, LLC, and Hotwire Communications of North Carolina, Limited Partnership (collectively, "Hotwire"). The Association would like to get a new provider and to free itself from its contracts with Hotwire, but Hotwire has resisted those efforts. In this action, the Association asks the Court to clear the way by declaring the contracts to be unconscionable and contrary to public policy.

2. In response, Hotwire defends the quality of its services and the terms of its bargain with the Association. Hotwire also moves to dismiss the Association's second claim for relief—that the contracts are void as against public policy—under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. For the following reasons, the Court **DENIES** the motion to dismiss but concludes that the complaint is sufficiently ambiguous that a more definite statement of the Association's claim is needed.

> *Jordan Price Wall Gray Jones & Carlton PLLC, by Brian S. Edlin and H. Weldon Jones, III, for Plaintiff Johnson's Landing Homeowners Association, Inc.*
>
> *Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Christopher G. Smith, Clifton L. Brinson, and Brandon E. Heffinger, for Defendants Hotwire Communications, LLC and Hotwire Communications of North Carolina, Limited Partnership.*
>
> *Parker Poe Adams & Bernstein LLP, by Melanie B. Dubis and Catherine R. L. Lawson, for Defendant Embarq Solutions, Inc. n/k/a CenturyLink Sales Solutions, Inc.*
>
> *No counsel appeared for Defendant Capitol Infrastructure, LLC.*
>
> *No counsel appeared for Defendant Smartresort Co., LLC, d/b/a/ Beyond Communications.*

Conrad, Judge.

## I.
## BACKGROUND

3. The Court does not make findings of fact on a Rule 12(b)(6) motion to dismiss. The following factual summary is drawn from relevant allegations in the complaint.

4. The Johnson's Landing subdivision is a residential community comprised of several neighborhoods in Wake County, North Carolina. (Compl. ¶¶ 1, 14, ECF No.

3.)    As in many modern subdivisions, the residents of Johnson's Landing share common amenities managed by a homeowners association. (Compl. ¶¶ 14, 22.)  This includes telecommunications services. (*See* Compl. ¶¶ 21–23, 34.)

5.    Relevant to this dispute are two contracts governing not only the provision of telecommunications services but also the infrastructure needed to provide them. As its name suggests, the Master Community Infrastructure Agreement ("Infrastructure Agreement") governs the construction of and access to telecommunications infrastructure for Johnson's Landing. (*See* Compl. ¶ 16; Compl. Ex. B.)  The agreement grants a single provider (which is now Hotwire) the exclusive right to build and maintain all necessary equipment, along with an exclusive easement to access the property and the infrastructure. (*See* Compl. Ex. B §§ 1.2, 4.1, 4.2.)  It also grants the same provider the exclusive right to arrange for the provision of services to residents. (*See* Compl. Ex. B § 4.2.)

6.    The second contract—the Bulk Services Agreement—is actually a pair of contracts governing the distribution of data, voice, video, and related services. (*See* Compl. Exs. E, F.)  The Bulk Services Agreement requires a provider (also now Hotwire) to offer basic services, meeting certain minimum quality standards, to all residents of Johnson's Landing. (Compl. Ex. F § 2.)  For those services, the Association pays one bulk rate, which it passes on to residents through assessments. (Compl. Ex. F § 3.)  Residents have the option to purchase additional services separately. (Compl. Ex. F § 3.)

7. The Infrastructure and Bulk Services Agreements date to the community's early years, at a time when the subdivision's declarant controlled the Association. (*See, e.g.*, Compl. ¶¶ 15, 16, 24, 25.) Now free of outside control, the Association remains responsible for managing telecommunications services under both agreements. (*See* Compl. ¶¶ 22, 23.) Although the infrastructure and service providers were different companies at first, both agreements were later assigned to Hotwire, which is now the sole provider. (Compl. ¶ 27.)

8. The Association has had a rocky relationship with Hotwire. It alleges that Johnson's Landing residents have experienced slow internet connections, inferior picture quality, and unexpectedly high costs. (*See* Compl. ¶¶ 38, 40.) The Association took steps, later rescinded, to terminate the Infrastructure Agreement as early as 2013. (*See* Compl. ¶¶ 38, 39.) Continuing frustration led the Association to issue another notice of default in 2017, detailing problems that it alleges Hotwire failed to cure. (*See* Compl. ¶¶ 41–43.) A notice of termination for the Infrastructure and Bulk Services Agreements followed shortly thereafter. (Compl. ¶¶ 44, 45.) The Association then began looking for new providers and contacted CenturyLink Sales Solutions, Inc. ("CenturyLink") in early 2018. (Compl. ¶ 47.) The complaint alleges that Hotwire objected to that effort, insisted that the two agreements remained in effect, and threatened CenturyLink with legal action if it were to enter into a contract with the Association. (Compl. ¶¶ 46, 48, 50, 77.)

9. The Association brought this suit to obtain a declaration of its rights as to the Infrastructure and Bulk Services Agreements.* The Association first asks the Court to declare that it may terminate both agreements on the ground that their terms are unconscionable or, alternatively, that it has already properly terminated the agreements for cause. (Compl. ¶¶ 61–63.) In its second claim, the Association seeks a declaration that the agreements are void as against public policy because they contain exclusivity clauses that restrict free-market competition. (Compl. ¶¶ 66–67, 74.)

10. Hotwire now moves to dismiss the latter claim on the ground that the complaint's allegations are insufficient to support a declaration that the Infrastructure and Bulk Services Agreements are void as against public policy. (ECF No. 12.) The motion has been fully briefed, and the Court held a hearing on August 27, 2018. The motion is ripe for determination.

II.
ANALYSIS

11. A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of the complaint." *Concrete Serv. Corp. v. Inv'rs Grp., Inc.,* 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986). In the context of a declaratory-judgment action, a complaint is sufficient if it "alleges the existence of a real controversy arising out of the parties' opposing contentions and respective legal rights under a . . . contract." *Morris v. Plyler Paper Stock Co.,* 89 N.C. App. 555, 557, 366 S.E.2d 556, 558 (1988). Our

---

* The Association sued not only Hotwire but also the three original signatories to the agreements. Of the three, only CenturyLink has made an appearance.

appellate courts have held that "[a] motion to dismiss for failure to state a claim is seldom appropriate 'in actions for declaratory judgments, and will not be allowed simply because the plaintiff may not be able to prevail.'" *Id.* (quoting *N.C. Consumers Power, Inc. v. Duke Power Co.*, 285 N.C. 434, 439, 206 S.E.2d 178, 182 (1974)).

12.    Here, the Association seeks a declaration that the Infrastructure and Bulk Services Agreements are contrary to public policy and, therefore, void.  The claim appears to be based on guidance from the Federal Communications Commission ("FCC"), which declared in 2007 that no cable operator "shall enforce or execute any provision in a contract that grants it the exclusive right to provide any video programming service (alone or in combination with other services) to a [multiple dwelling unit]."  *In the Matter of Exclusive Serv. Contracts for Provision of Video Servs. in Multiple Dwelling Units & Other Real Estate Devs.*, 22 F.C.C. Rcd. 20235, 20251 (Nov. 13, 2007) ("FCC Order").  The rationale for this rule is that these types of exclusivity clauses are anticompetitive, doing more harm than good to consumers by increasing costs while reducing available options.  *Id.* at 20235, 20240; *see also Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC*, 713 F.3d 187, 192 (4th Cir. 2013).  As a result, "[a]ny such exclusivity clause shall be null and void."  22 F.C.C. Rcd. at 20251.

13.    The complaint refers to this FCC Order indirectly, alleging that exclusivity clauses "have been regulated and deemed void as against public policy."  (Compl. ¶ 68.)  It further alleges that the Infrastructure and Bulk Services Agreements include exclusivity clauses that impose "an inescapable framework," forcing the

residents of Johnson's Landing to receive services from Hotwire and Hotwire alone. (Compl. ¶ 72.) These clauses, it contends, "run afoul of established public policy considerations" and support a determination that both agreements are void. (Compl. ¶¶ 73, 74.)

14. In support of its motion to dismiss, Hotwire argues that there is no genuine controversy between it and the Association. Hotwire concedes that the Infrastructure Agreement grants it the exclusive rights to install infrastructure and to arrange for the provision of telecommunications services, and it further concedes that both are subject to the FCC Order. It contends, though, that it has not sought to enforce these rights. (*See* Defs.' Br. in Supp. 9, ECF No. 13 ["Br. in Supp."].) And it points to language in the Infrastructure Agreement stating that the exclusivity clauses are "subject to" governing laws. (*See* Compl. Ex. B § 4.2; Compl. Ex. C § 3.) This, according to Hotwire, is a built-in safeguard that means neither clause can go beyond what the FCC Order allows. (*See* Br. in Supp. 8.)

15. Hotwire's argument has surface appeal. Our appellate courts have long held that "[m]ere apprehension or the mere threat of an action or a suit is not enough" to demonstrate an actual controversy to support a declaratory-judgment action. *Gaston Bd. of Realtors, Inc. v. Harrison*, 311 N.C. 230, 234, 316 S.E.2d 59, 62 (1984). In addition, some actions—a covenant not to sue, for example—may moot a case altogether by clearly renouncing a claim or other legal position. *See, e.g., Already, LLC v. Nike, Inc.*, 568 U.S. 85, 95 (2013). On this basis, to the extent Hotwire

represents that it does not intend to enforce any exclusivity clause barred by the FCC Order, that could tend to show the absence of a live controversy.

16. But the case has not reached that point. As far as the Court is aware, Hotwire has not issued a formal covenant not to sue. And the complaint—which is the focal point for Rule 12(b)(6)—alleges that Hotwire has taken steps to enforce its rights. As alleged, the Association has been unable to engage CenturyLink as its new telecommunications services provider because Hotwire threatened CenturyLink with legal action if it entered into a contract to do so. (*See* Compl. ¶¶ 47–48.) The Court is bound to take these allegations as true, and they show more than a mere apprehension on the part of the Association. *See, e.g.*, *Morris*, 89 N.C. App. at 557, 366 S.E.2d at 558 (allowing claim to proceed based on allegations that plaintiffs had attempted to exercise their rights and defendant "had threatened legal action").

17. Furthermore, even if Hotwire irrevocably renounces its exclusive rights to install infrastructure and arrange for the provision of services, that would not fully resolve this dispute. Hotwire represents that it intends to enforce the Bulk Services Agreement as well as its exclusive right to access any infrastructure that it has built, arguing that the FCC Order does not apply to either. (*See* Br. in Supp. 7–8.) The position Hotwire takes is that, although other providers may serve the residents of Johnson's Landing, they may not use Hotwire's own infrastructure to do so, and the Association must continue to pay Hotwire its bulk services rate even if residents do not use those services going forward. (*See* Br. in Supp. 9.)

18. That is not how the Association views matters. The complaint expressly targets Hotwire's "exclusive right to access, control, and operate" the existing infrastructure along with its exclusive easement—the very rights that Hotwire intends to enforce. (Compl. ¶¶ 69, 70.) In addition, the Association believes the agreements are so intertwined that the defective clauses render the whole framework incurable. Rather than asking the Court to strike the exclusivity clauses on a line-item basis, the Association contends that the agreements should be declared void in their entirety. (Compl. ¶ 74.) In short, the Association seeks to be free of Hotwire altogether.

19. Whether the Association is entitled to such a declaration is uncertain. As Hotwire notes, the FCC Order, by its terms, does not purport to void whole contracts, 22 F.C.C. Rcd. at 20253, and in other guidance, the FCC has approved of bulk-payment arrangements like the one in the Bulk Services Agreement. *See S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182–83 (4th Cir. 2013). For present purposes, though, the question is not whether the Association will ultimately prevail. It is instead whether the complaint alleges "an actual genuine existing controversy." *N.C. Consumers Power*, 285 N.C. at 446, 206 S.E.2d at 186. The Association's complaint does so, and Hotwire's brief serves to confirm the parties' opposing legal positions on many, if not all, issues. As a result, "[t]he parties are entitled to a declaration of their rights and liabilities and the action should be disposed of only by a judgment declaring them." *Nationwide Mut. Ins. Co. v. Roberts*, 261 N.C. 285, 288, 134 S.E.2d 654, 657 (1964).

20.     The Court therefore denies the motion to dismiss.  Hotwire is, of course, free to renew its arguments at a later stage.  *See, e.g.*, *Gvest Real Estate, LLC v. JS Real Estate Invs., LLC*, 2017 NCBC LEXIS 32,  at *9 (N.C. Super. Ct. Apr. 6, 2017) (denying motion to dismiss declaratory-judgment claim); *Legalzoom.com, Inc. v. N.C. State Bar*, 2012 NCBC LEXIS 49, at *14 (N.C. Super. Ct. Aug. 27, 2012) (same).

21.     Ordinarily, that would be the end of the matter.  Here, though, the parties' briefing revealed a significant ambiguity in the Association's complaint.  Although the complaint requests a declaration that the Infrastructure and Bulk Services Agreements are void in their entirety, the Association's response brief states that it "broadly challenges" both agreements for "either whole or partial relief."  (Pl.'s Mem. in Opp'n 8, ECF No. 18.)  In other words, to the extent the agreements are not declared void in their entirety, the Association alternatively requests a declaration that one or more specific clauses in the agreements are null and void.  Even liberally construed, the complaint fails to identify all relevant clauses or the requested declarations with sufficient clarity.

22.     This ambiguity leaves both Hotwire and the Court guessing as to which terms in the agreements are in dispute.  A more definite statement of the claim is needed.  *See* N.C. R. Civ. P. 12(e).

23.     Thus, on its own motion, the Court directs the Association to file a more definite statement of its claim for declaratory judgment on the basis that the Infrastructure and Bulk Services Agreements are void as against public policy.  *See Page v. Mandel*, 154 N.C. App. 94, 97–98, 571 S.E.2d 635, 637–38 (2002) (holding that

trial courts may treat Rule 12(b)(6) motion as a motion for more definite statement when appropriate). The Association must (1) identify each contract that it contends is invalid in its entirety; (2) identify each contractual clause that it contends is contrary to public policy; and (3) specify the declarations that it seeks from the Court.

## III.
## CONCLUSION

24. For these reasons, the Court **DENIES** the motion to dismiss.

25. On its own motion, though, and pursuant to Rule 12(e), the Court concludes that a more definite statement is warranted. The Court therefore **ORDERS** the Association to file an amended complaint consistent with this Order & Opinion by November 19, 2018.

This the 29th day of October, 2018.

/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
 for Complex Business Cases