JOHN C. KIRKMAN, JR., THOMAS L. KIRKMAN AND LINA KIRKMAN HAMILTON v. MINNIE H. KIRKMAN

No. 7814SC934

(Filed 3 July 1979)

Declaratory Judgment Act § 3— agreement for devise of property—no breach of agreement—no justiciable controversy

There was no justiciable controversy between the parties so as to give the court jurisdiction under the Declaratory Judgment Act where plaintiffs were third party donee beneficiaries of an executory contract between their father and defendant to devise real property in a particular manner; plaintiffs in essence sought a determination of their rights upon a breach of the contract by defendant; but no breach of contract could occur until defendant either voluntarily disabled herself from being able to comply with its terms or died without making a will disposing of the property in accordance with the contract.

APPEAL by plaintiffs from *McKinnon, Judge*. Judgment entered 30 June 1978 in Superior Court, DURHAM County. Heard in the Court of Appeals on 14 June 1979.

Plaintiffs instituted this action under G.S. § 1-253 to -267, the Declaratory Judgment Act, and have alleged that "[a]n actual controversy of a justiciable nature" exists with regard to a Postnuptial Agreement entered into by their father, John C. Kirkman, Sr., who is now deceased, and the defendant. The Postnuptial Agreement recited that John C. Kirkman and Minnie H. Kirkman had purchased a house and lot at 4316 Samoa Court, Durham, North Carolina, as tenants by the entirety on 30 January 1973; that both parties had contributed an equal sum of money for the purchase of the property; and that they desired upon the death of the survivor that the property be sold and the proceeds divided between the plaintiffs and the sister of the defendant. In an attempt to effectuate their intent, the parties contracted as follows:

> The parties to this Agreement will execute separate Last Wills and Testaments which will provide that upon their death the said property in question be sold and the proceeds of the sale be divided into two equal shares. One share shall be left to Lina Kirkman Hamilton, John C. Kirkman, Jr., and Thomas L. Kirkman, per stirpes, share and share alike. The remaining share shall be bequeathed to Elsie H. Westmoreland, if she shall survive the parties to this Agreement . . .

The Postnuptial Contract was dated 19 February 1973, and the signatures of the parties were notarized.

The record also contains documents purporting to be the Last Wills of John C. Kirkman, Sr., and Minnie H. Kirkman, each dated 20 February 1973. The Will executed by John C. Kirkman, Sr., contains the following provision:

> If my beloved wife, Minnie H. Kirkman, shall not survive me, I direct my Executor to sell that property which my wife, Minnie H. Kirkman, and I purchased at 4316 Samoa Court, Durham, North Carolina, and the proceeds of the sale divided into two equal shares. I bequeath one share to my beloved children, Lina Hamilton Kirkman, John C. Kirkman, Jr., and Thomas L. Kirkman, share and share alike, with the surviving issue of any deceased child receiving per stirpes and in fee the interest of their deceased parent. The remaining share I bequeath to my sister-in-law, Elsie H. Westmoreland if she shall survive me. . . .

Kirkman v. Kirkman

The Will executed by Minnie H. Kirkman contains the following provision:

> My husband, John C. Kirkman, and I have acquired a home at 4316 Samoa Court, Durham, N. C. on January 30, 1973. If my husband shall not survive me, I direct that said property be sold and the proceeds divided into two equal shares. I bequeath one share to my sister, Elsie H. Westmoreland, if she shall survive me . . .
>
> The remaining share I bequeath to the beloved Children of my husband, John C. Kirkman, Sr., Lina Kirkman Hamilton, John C. Kirkman, Jr. and Thomas L. Kirkman, share and share alike . . .

Plaintiffs' Complaint contains the following allegation:

> 5. It is alleged upon information and belief that Minnie H. Kirkman has revised her will that she executed on February 20, 1973 and eliminated the provisions of the contract in said Postnuptial Agreement and in the aforedescribed wills to defraud and defeat her obligation, or the obligation of her personal representative, to plaintiffs.

Plaintiffs prayed for "a judgment impressing a constructive trust upon one-half of the proceeds of the sale of the real property located at 4316 Samoa Court, Durham, North Carolina, or for a judgment impressing a constructive trust upon a one-half undivided interest in said property, for the benefit of plaintiffs."

Defendant answered, denying that she had revised her Will to eliminate the provisions at issue. Defendant's Answer also contains a "counterclaim" wherein defendant alleges "that the paper writing hereto attached as Exhibit 'A' and designated Postnuptial Agreement is void as a matter of law in that same is void *ab initio*, that defendant was not examined privately and said document was not acknowledged pursuant to the provisions of G.S. 52-6 . . ." Defendant prayed that the Court declare the Postnuptial Agreement "to be void and invalid." Defendant also filed a motion for judgment on the pleadings with her Answer. On 26 May 1978, defendant filed a motion for summary judgment and supporting affidavit, and on 30 June 1978, the trial court entered an Order granting defendant's motion, which contained the following:

[T]he Court having studied the pleadings, interrogatories and answers, affidavits, and other matters of record and having considered arguments and briefs of counsel, and the Court being of the opinion and concluding as a matter of law there is no genuine issue as to any material fact, and that the defendant is entitled to judgment as a matter of law on its counterclaim for a declaratory judgment; that the agreement which is the subject of controversy in this legal action is void for its failure to have been acknowledged following a private examination under North Carolina General Statutes, § 52-6; and that North Carolina General Statutes, § 52-6 is not unconstitutional . . .

From the foregoing Order, plaintiffs appealed.

*Nancy Fields Fadum for plaintiff appellants.*

*E. C. Harris and Randall, Yaeger & Woodson, by John C. Randall, for defendant appellee.*

HEDRICK, Judge.

Although it has not been raised directly by either party, we first consider the issue of jurisdiction. "An actual controversy between the parties is a jurisdictional prerequisite for a proceeding under the Declaratory Judgment Act." *Adams v. North Carolina Department of Natural and Economic Resources,* 295 N.C. 683, 703, 249 S.E. 2d 402, 414 (1978). When the record shows that there is no basis for declaratory relief, as when the complaint does not allege an actual, genuine existing controversy, this may be taken advantage of by a Rule 12(b)(6) motion to dismiss. *North Carolina Consumers Power, Inc. v. Duke Power Co.,* 285 N.C. 434, 206 S.E. 2d 178 (1974); *Newman Machine Co. v. Newman,* 275 N.C. 189, 166 S.E. 2d 63 (1969). While the Declaratory Judgment Act is to be liberally construed, its provisions are not without limitation. In determining whether an actual controversy exists in the present case, the following principles concerning the scope of the Act are applicable:

[The Act] does not undertake to convert judicial tribunals into counselors and impose upon them the duty of giving advisory opinions to any parties who may come into court and ask for either academic enlightenment or practical

guidance concerning their legal affairs. This observation may be stated in the vernacular in this wise: The Uniform Declaratory Judgment Act does not license litigants to fish in judicial ponds for legal advice. [Citations omitted.]

. . .

While the Uniform Declaratory Judgment Act thus enables courts to take cognizance of disputes at an earlier stage than that ordinarily permitted by the legal procedure which existed before its enactment, it preserves inviolate the ancient and sound juridic concept that the inherent function of judicial tribunals is to adjudicate genuine controversies between antagonistic litigants with respect to their rights, status, or other legal relations. This being so, an action for a declaratory judgment will lie only in a case in which there is an actual or real existing controversy between parties having adverse interests in the matter in dispute.

*Lide v. Mears*, 231 N.C. 111, 117-18, 56 S.E. 2d 404, 409 (1949). *See also North Carolina Consumers Power, Inc. v. Duke Power Co.*, 285 N.C. at 446-47, 206 S.E. 2d at 187.

Application of the foregoing principles to the facts of the present case compels the conclusion that the trial court lacked jurisdiction to enter a summary judgment. The plaintiffs in the present case are third party donee beneficiaries of the executory contract between their father and the defendant to devise the real property known as 4316 Samoa Court, Durham, North Carolina, in a particular manner. Although the plaintiffs have alleged that the defendant revised her Will to eliminate the provisions relating to disposition of the residence, it is clear that no breach of the Postnuptial Agreement could occur until the defendant either voluntarily disables herself from being able to comply with its terms, as for example by conveying the real property to a third party, or dies without making a Will disposing of the property in accordance with the contract. Even if the allegation of the plaintiffs was true, there is nothing to prevent the defendant from revising her Will prior to her death to bring it into compliance with the Postnuptial Agreement. The courts do not have the authority to declare the legal rights and obligations of the plaintiffs, as third party donee beneficiaries, to an executory contract upon the mere allegation that they anticipate that the

obligor will breach the contract at some time in the future. As there has been no breach of the contract, any order entered by the court attempting to secure the obligor's performance in compliance with the terms of the contract would be unenforceable.

In essence, plaintiffs seek a determination of their rights upon a breach of the contract by the defendant. No breach has yet occurred, and there is no assurance that the contract will be breached. The facts here alleged present a wholly abstract question and any decision from this Court on such facts would be purely advisory. *See City of Raleigh v. Norfolk Southern Railway Co.*, 275 N.C. 454, 168 S.E. 2d 389 (1969).

Furthermore, plaintiffs pray for the imposition of a constructive trust on the property or on the proceeds from its sale. While proceedings under the Declaratory Judgment Act have been given wide latitude, they nevertheless do not encompass the general equity jurisdiction of the court. *See Brandis v. Trustees of Davidson College*, 227 N.C. 329, 41 S.E. 2d 833 (1947); *Elliott v. Ballentine*, 7 N.C. App. 682, 173 S.E. 2d 552 (1970).

We hold that plaintiffs have failed to allege sufficient facts to show the existence of an actual or justiciable controversy with regard to any interest they have in the property sufficient to invoke the jurisdiction of the court to declare their rights or to impress a constructive trust on the property for their benefit. It follows that the court lacked jurisdiction to make any declaration with respect to the constitutionality of G.S. § 52-6 as prayed for in defendant's "counterclaim."

For the reasons stated, the judgment of the Superior Court entered on 30 June 1978 is vacated, and the matter is remanded to the Superior Court of Durham County for entry of an Order dismissing the proceeding and cancelling the notice of lis pendens.

Vacated and remanded.

Judges VAUGHN and ARNOLD concur.