JOHN RENO COLEMAN AND BETTY JORDAN COLEMAN v. CHARLES EDWARDS AND MARY STRICKLAND WARD, EXECUTRIX OF THE ESTATE OF DELLA H. COLEMAN

No. 8313DC1057

(Filed 4 September 1984)

1. Estates § 4.1— death of life tenant after lease of land—entitlement to rent

Where a life tenant executed a lease of land for the year 1983 six days before her death, and the rent for the entire year was paid to the life tenant's estate, the estate of the life tenant is entitled only to the proportion of the rent that had accrued prior to the death of the life tenant, and 359/365 of the rent should be paid to the remaindermen. G.S. 42-7.

2. Declaratory Judgment Act § 4.4— lease of land—effect of death of life tenant —entitlement to rent—actual controversy

There was a sufficient controversy between the estate of a life tenant and the remaindermen to permit a declaratory judgment as to whether the life tenant's death six days after the execution of a lease of land terminated the lease and as to who was entitled to the year's rent which had been paid to the estate of the life tenant. G.S. 1-253; G.S. 1-254; G.S. 1-255.

Judge HEDRICK dissenting.

APPEAL by defendant Mary Strickland Ward from *Wood (William E.), Judge*. Judgment entered 29 April 1983 in District Court, COLUMBUS County. Heard in the Court of Appeals 20 August 1984.

This appeal arises out of an application filed on 8 March 1983 to have the Court declare the respective rights of the parties arising out of the administration of the estate of Della H. Coleman.

Plaintiffs own the remainder interest in certain land in which Della Coleman owned a life estate. On 1 January 1983 Coleman executed a lease of the land to Charles Edwards for the year of 1983. The rental price was $3,500 and was due to be paid on or before 15 September 1983. Coleman died on 7 January 1983.

Plaintiffs alleged, among other things, that:

Since Mrs. Coleman died six days after the execution of the Contract and Lease and all provisions of the Contract were still executory and no consideration had passed nor had the Lessee done anything to his detriment, does the Lease terminate and the property go to the Plaintiffs in accordance with their chain and source of title or is the Defendant, Charles Edwards, entitled to farm the land and the tobacco for the year 1983 under the terms of said Contract and Lease?

In her answer to this allegation, Coleman's executrix responded:

The allegations that . . . all the provisions of the lease and contract were still executory and that no consideration had passed and that the Lessee (Charles Edwards) had done nothing to his detriment are false and are hereby denied. The true facts are that the Lessee had paid the consideration for the lease and had taken positive steps of action in reliance upon the lease. Thus, the Lessee under the provisions of N.C.G.S. Sec. 47-7 is entitled to continue his occupation to the end of 1983.

Defendant Edwards, the tenant, made an identical answer.

Plaintiffs allege the following:

That the aforementioned Contract and Lease contains the following provision: "Said party of the Second Part, Edwards, has placed a trailer home upon the premises of Mrs. Coleman, but said party of the second part retains ownership of said trailer home and retains the right to move the trailer home, a 1965 Kentuckian 10 foot x 45 foot, at his discretion. The party of the second part also retains the right to remove the water pump, plumbing and the service pole at any time."

That as to said paragraph in said Contract and Lease, the following question has arisen:

Does the Lessee, Charles Edwards, have any right to continue to leave his trailer home upon the lands now owned by the Plaintiffs and does he have any right to remove the water pump, plumbing and service pole?

In the answer to the allegation both defendants responded:

> The right of the Defendant Charles Edwards to leave his trailor [sic] home upon the lands is inherent in the lease and will be determined by the validity of the lease. The right of the Defendant Charles Edwards to remove the water pump, plumbing and service pole is determined by ascertaining whether these items are "real fixtures" or "personal fixtures." The two Defendants have an express agreement, Plaintiffs' Exhibit "A," that these items are to retain their personal character and thus property of the Defendant Charles Edwards and subject to removal at Charles Edwards' will.

Plaintiffs also alleged:

> That paragraph 4 of the aforementioned Contract and Lease contains the following provision: "Della H. Coleman hereby grants the right to transfer 12,000 pounds of tobacco to Farm Serial No. B-987, to wit: the farm lands herein being leased."

> That as to said paragraph in said Contract and Lease, the following question has arisen:

> Does the said Charles Edwards have any right to transfer 12,000 pounds of tobacco to the farm owned by the Plaintiffs herein?

Plaintiffs also asserted that there were other questions with respect to Edwards' right to sell part of the base tobacco allotment and with respect to his right to use some of the farm buildings. Defendants responded, in effect, that Edwards' rights were plainly set out in the lease.

Plaintiffs then asked for a judicial declaration on the following question: "That as to the aforementioned Contract and Lease, is the same valid and binding as to any provision or did it terminate at the time the life estate of Della H. Coleman, widow, the party of the first part, expired?"

Defendants responded:

> It is stated that the contract and lease is valid and binding as to all the provisions and that pursuant to N.C.G.S. Sec.

42-7 the lease and contract did not terminate at the time the life estate of Della H. Coleman expired at the death of Mrs. Della H. Coleman but rather shall continue until the end of the year 1983.

Both defendants' prayer for relief contained the following: "That the Court declare the lease and contract, Plaintiffs' Exhibit 'A,' to be valid and binding and in full force and effect; that the Court order the Plaintiffs to cease and desist in harassing the Lessee (Charles Edwards) in his efforts . . ."

After it was made to appear that the Edwards had paid the full rent and that it was in the estate account of Della H. Coleman, plaintiffs amended their complaint to set out the following:

That the Lease provides for a payment of $3,500.00 and the question that arises therefore is as follows:

Does [sic] the monies paid for this Lease fall outside of the Estate and become the property of the remainderman or does it belong to the Estate with the remainderman having no interest in the same?

In pertinent part the Court concluded as follows:

That the lease which forms the subject of this controversy, recorded in Book 345, page 456, Columbus County Registry, is valid and binding for one year and that the said Charles Edwards has the right to transfer 12,000 lbs. of tobacco to the farm which forms the subject of this lease, but does not have any right to sell ten percent (10%) or any percent in excess of the base allotment of 6,431 lbs., since any sale would be detrimental to the remaindermen and extend past one year and (that the $3,500.00 paid as rent is 6/365 property of the estate and 359/365 of the property of the Plaintiffs) and that the said Charles Edwards shall within twenty (20) days from the date of this Order move from the premises the mobile home, service pole and water pump which are his sole and separate property and that he has no right to the use of any buildings on the lands.

Defendant executrix appealed. Defendant Edwards did not.

*Eubanks, et al., by James C. Eubanks, III, and Williamson and Walton, by Benton Walton, III, for plaintiff appellees.*

*Jerry Arnold Jolly, for defendant appellant Mary Strickland Ward, Executrix of the estate of Della H. Coleman.*

VAUGHN, Chief Judge.

[1] The only question raised on appeal is by defendant executrix. She contends the court erred in ordering her as executrix to pay the remaindermen 359/365 of the $3,500.

The court made no finding as to the exact date the rent was paid and placed into the account of the estate. The executrix apparently contends that the remaindermen are due only the payments coming due "since the last payment." She further argues that since the statute does not expressly require it, she is not required to pay anyone anything. She argues that the statute only requires the tenant to pay the succeeding owner the rent accrued since the last payment, and that the rights of the tenant against the estate are not before the court.

The applicable statute is as follows:

When any lease for years of any land let for farming on which a rent is reserved determines during a current year of the tenancy, by the happening of any uncertain event . . . the tenant . . . shall continue his occupation to the end of such current year . . . and shall pay to such succeeding owner a part of the rent accrued since the last payment became due, proportionate to the part of the period of payment elapsing after the termination of the estate of the lessor . . .

G.S. 42-7.

Here the rent for the entire year had been paid to the life tenant's estate. The court correctly declared that the estate of the tenant-lessor was only entitled to the proportion of the rent that had accrued prior to the death of the tenant. The court further correctly declared that the executrix of the estate should pay the rest of the rent, $3,442.47, to the remaindermen.

[2] Although all parties, at trial and on appeal, urge different judicial declarations as to the effect of the lessor's death on the

lease and the person entitled to the rent, the dissent would have us declare that the court did not have "jurisdiction" because the parties have "merely requested the court to give the parties legal advice as to the interpretation of the terms of the lease, wherein no controversy exists."

In addition to the very familiar provisions of G.S. 1-253 of the Uniform Declaratory Judgment Act, the following provisions are also relevant to the appeal:

> G.S. 1-254. Any person interested under a . . . written contract . . . or whose rights . . . are affected by a . . . statute, . . . contract or franchise may have determined any question of construction or validity arising under the instrument, statute, . . . contract, or franchise, and obtain a declaration of rights, status, or other legal relations. . . .

> G.S. 1-255. Any person interested as or through an executor, . . . creditor . . . of the estate of a decedent . . . may have a declaration of rights or legal relations in respect thereto:

> . . . .

> (3) To determine any question arising in the administration of the estate. . . .

We feel that when the case is construed with the liberality required by the Uniform Declaratory Judgment Act, it is clear to us that there was and is a controversy between the parties. G.S. 1-264 requires: "This Article is declared to be remedial, its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and it is to be liberally construed and administered."

It is not hard for us to understand that plaintiffs claimed that the life tenant's death six days after the execution of the lease of the farm terminated the lease. Defendants, on the other hand, contended that the lease would continue for the full year with the tenant entitled to all the rights he would have had if the life tenant had survived the year. We also have no difficulty understanding that plaintiffs claimed they were entitled to most of the rent money held by the executrix of the estate. The executrix, on the other hand, claimed that all of the rent paid belonged to the estate.

Although the existence of a genuine controversy is made more explicit here than in *Lide v. Mears*, 231 N.C. 111, 56 S.E. 2d 404 (1949), we think the language used by Justice Ervin in holding that a dispute was shown to exist provides guidance as to how our court should review the records in these cases.

> Candor compels the observation that the pleadings in the case at bar do not show the existence of a controversy between the parties as to the meaning of the will or as to their rights thereunder with the explicitness of allegation desirable in declaratory judgment actions. But when these pleadings are interpreted with extreme liberality, they do reveal by implication rather than by express averment that the plaintiffs and the defendants are in dispute as to whether the duties of Lawrence K. Mears as surviving trustee of the testamentary trust have ceased and as to the respective interests given to them by the will and codicil in the store property and the hotel property of the testator in Canton. In consequence, the court below was empowered to render a declaratory judgment covering these matters.

231 N.C. at 118-19, 56 S.E. 2d at 409-10.

Plaintiffs were clearly persons whose rights were affected by the effect of the lease and were entitled to a judicial declaration of those rights by the court. Defendants' allegations would have denied plaintiffs any rights to the land during the term of the lease and would have denied them any right to the rent paid pursuant to the lease. We hold that the court properly declared the respective right of the parties, whether under G.S. 1-253, G.S. 1-254 or G.S. 1-255.

For the reasons stated, the judgment is affirmed.

Affirmed.

Judge WELLS concurs.

Judge HEDRICK dissents.

Judge HEDRICK dissenting.

Although it has been raised directly by neither party, I must first consider whether the trial court had jurisdiction to enter any

order. "An actual controversy between the parties is a jurisdictional prerequisite for a proceeding under the Declaratory Judgment Act." *Kirkman v. Kirkman*, 42 N.C. App. 173, 176, 256 S.E. 2d 264, 266, *disc. rev. denied*, 298 N.C. 297, 259 S.E. 2d 300 (1979) (citation omitted).

> While the Uniform Declaratory Judgment Act . . . enables courts to take cognizance of disputes at an earlier stage than that ordinarily permitted by the legal procedure which existed before its enactment, it preserves inviolate the ancient and sound juridic concept that the inherent function of judicial tribunals is to adjudicate genuine controversies between antagonistic litigants with respect to their rights, status, or other legal relations. This being so, an action for a declaratory judgment will lie only in a case in which there is an actual or real existing controversy between parties having adverse interests in the matter in dispute.

*Id.* at 177, 256 S.E. 2d at 267 (quoting *Lide v. Mears*, 231 N.C. 111, 118, 56 S.E. 2d 404, 409 (1949)). To put it more colorfully: "The Uniform Declaratory Judgment Act does not license litigants to fish in judicial ponds for legal advice." *Kirkman* at 177, 256 S.E. 2d at 267 (citation omitted).

In the present case the plaintiffs have not alleged any facts demonstrating any controversy between themselves and either defendant or any controversy between the defendants. Plaintiffs have merely alleged that "certain questions" have arisen as to the construction of the lease. Plaintiffs have not alleged that either of the defendants has made any contention regarding construction of the lease. Nor have plaintiffs alleged that the lease is invalid or ambiguous in any way. Defendants, on the other hand, have merely alleged and prayed that the court declare the lease to be "valid and binding," in the absence of any suggestion that the lease is invalid or not binding. Plaintiffs have not alleged that they were entitled to immediate possession of the property when Ms. Coleman died, or that defendant Edwards has made any claim to any of the property adverse to the interests of the plaintiffs or defendant Ward. Although plaintiffs ask whether the rent of $3,500.00 "fall[s] outside of the Estate and become[s] the property of the remainderman or . . . belong[s] to the Estate with the remainderman having no interest in the same," they have not alleged that

any controversy has arisen between the parties as to who is entitled to the money. In short, the parties, particularly the plaintiffs, have merely requested the court to give the parties legal advice as to the interpretation of the terms of the lease, wherein no controversy exists.

While it is true, as the majority states, that all parties "urge different judicial declarations as to the effect of the lessor's death on the lease and the person entitled to the rent" in the briefs filed in this Court on appeal, there is nothing in the record to indicate that any party urged such "different judicial declarations" at trial. Whether a court has jurisdiction to enter a declaratory judgment in a particular proceeding is determined from the pleadings filed in the cause, not from the briefs filed on appeal.

If it be conceded that the plaintiffs have sufficiently alleged that they are persons interested in the estate of Della Coleman so as to invoke the jurisdiction of the court to enter a declaratory judgment pursuant to G.S. 1-253 and 1-255, the court nevertheless should not have proceeded to judgment, since the record does not disclose that all persons having an interest in the administration of the estate were made parties to the proceeding. G.S. 1-260; *Edmondson v. Henderson*, 246 N.C. 634, 99 S.E. 2d 869 (1957); *Morganton v. Hutton & Bourbonnais Co.*, 247 N.C. 666, 101 S.E. 2d 679 (1958); *Construction Co. v. Board of Education*, 278 N.C. 633, 180 S.E. 2d 818 (1971).

I vote to vacate the judgment.