JOHN A. SHARPE, JR., HELEN A. SHARPE, CLIFFORD S. SHARPE, BRENDA B. SHARPE, AND HAL C. SHARPE v. PARK NEWSPAPERS OF LUMBERTON, INC.

No. 8516SC510

(Filed 17 December 1985)

1. Declaratory Judgment Act § 3— necessity for actual controversy

    The existence of an actual controversy is a jurisdictional prerequisite under the Declaratory Judgment Act.

2. Declaratory Judgment Act § 3— necessity for actual controversy

    A genuine controversy must appear from the complaint and the record to establish jurisdiction under the Declaratory Judgment Act, but there is no absolute requirement that the controversy exist at the time the pleadings are filed.

3. Declaratory Judgment Act § 3— necessity for actual controversy

    Any genuine controversy existing at any time after the pleadings are filed up to the time the motion to dismiss is ruled upon is sufficient to establish jurisdiction under the Declaratory Judgment Act.

4. Declaratory Judgment Act § 3— actual controversy—unavoidable litigation

    An actual controversy exists for purposes of the Declaratory Judgment Act when litigation appears unavoidable.

5. **Declaratory Judgment Act § 4— anti-competitive provisions in promissory notes—justiciable controversy**

    A controversy justiciable under the Declaratory Judgment Act was presented as to whether plaintiffs are bound by anti-competitive provisions in promissory notes received in the sale of a newspaper's assets where the notes required defendant's written consent in order for plaintiffs to engage in a competitive newspaper business; plaintiffs repeatedly made oral requests to defendant for such consent but defendant consistently avoided giving a definite answer; and specific plans by plaintiffs for competition with defendant were not essential to a justiciable controversy.

    Chief Judge HEDRICK dissenting.

APPEAL by plaintiffs from *Ellis, Judge.* Judgment entered 11 December 1984 in Superior Court, ROBESON County. Heard in the Court of Appeals 18 November 1985.

This is a civil action in which plaintiffs seek declaratory judgment that they are not bound by certain restrictive terms of promissory notes of defendant Park Newspapers of Lumberton, Inc., which they received in distribution of the proceeds of the sale of corporate assets.

Plaintiffs are former one-third owners of the Robesonian, Inc., which prior to March 1982 carried on the business of publishing a newspaper in Lumberton, North Carolina. The officers and majority stockholders, over plaintiffs' vote in opposition, sold the assets of the corporation to defendant, for the payment of a certain sum in cash and notes for the balance of the purchase price. The notes, which plaintiffs received in distribution at liquidation of the Robesonian, Inc., were dated March 1982 and contained the following language:

    A. If the Holder does not compete against Park as hereinafter defined, the principal amount shall bear interest at the rate of ten percent (10%) per annum and shall be payable:

    $78,724.96 on April 1, 1983, together with accrued interest; thereafter in equal quarterly payments of principal and interest of $30,077.99 during the following nine year period on the first day of July, October, January and April of each year; or

    B. If the Holder does compete with Park, as hereinafter defined, then the unpaid principal amount of this Note shall

thereafter not bear interest and shall be payable in a lump sum on March 23, 1992.

For the purposes of determining the payments due under this Note, as provided above, the Holder shall be deemed and held to be competing against Park if he or she shall, without prior written consent and approval of Park, to any extent directly or indirectly own, operate, finance, establish, control, support, or be employed by a newspaper or other printed advertising medium in Robeson County, North Carolina or in any county contiguous to Robeson County, North Carolina, or if he or she shall permit any third party to use his or her name to finance, directly or indirectly, any activities which would result in competition with Park or with any corporation affiliated with Park which publishes a newspaper or other printed advertising medium in any of the aforesaid counties.

Plaintiffs have received and negotiated the checks representing the quarterly payments of interest and principal on the notes received in the distribution.

Plaintiffs instituted this action in July 1983, alleging that they had not agreed in writing to refrain from competing with defendant as they contend is required by G.S. 75-4. Plaintiffs sought a declaration that the anti-competitive provisions of the note are unenforceable as to them and that they are entitled to compete with defendant anywhere in North Carolina. The complaint contains the following allegation:

16. . . . [P]laintiffs do intend, subject to circumstances of their health, financial ability, availability of personnel, business feasibility, and public demand, to engage in the activities of publishing a newspaper or other printed advertising media, or to seek employment with a newspaper or other printed advertising media in Robeson County, North Carolina, or in a county contiguous to Robeson County, North Carolina.

In its answer, defendant denied that there is an actual controversy between the parties. Defendant admitted that plaintiffs are free to compete with defendant in the newspaper business, either with defendant's written consent or without such consent, in

which case defendant has the right to pay the lesser amount as provided in the promissory notes.

Plaintiffs deposed Roy Park, chief executive officer of defendant, and repeatedly made oral requests for permission to compete. Park responded in essence that he did not answer oral requests and would want details of the proposed competition in any event before he would answer. Park indicated that anticompetitive provisions are customary in purchases of newspaper assets. Without the complained-of provisions, he testified, the value of the purchased newspaper would have been substantially reduced; Park's bid was 43% higher than the next highest bid. Plaintiffs have never submitted a written request or provided specific details of their plans to compete. In order to maintain the capability to compete, plaintiffs have continued membership in press associations, inquired about newspaper equipment, and taken an option to purchase office space.

Plaintiffs' motion for summary judgment was denied on the grounds that there remained a genuine issue as to the material question of the existence of a justiciable controversy. After an evidentiary hearing on this issue, Judge Ellis found that "due to plaintiffs' lack of evidence of any specific plans to compete with defendant, as defined in the Promissory Note, and due to the lack of evidence of plaintiffs having requested written consent and approval of defendant to so compete, that this matter has not ripened into an actual controversy." He concluded that the court was without jurisdiction to entertain the action pursuant to the Declaratory Judgment Act. From the order dismissing plaintiffs' complaint pursuant to G.S. 1A-1, R. Civ. P. 41(b), plaintiffs appeal.

*McCoy, Weaver, Wiggins, Cleveland & Raper, by Donald W. McCoy, and Lee & Lee, by W. Osborne Lee, Jr., for plaintiff-appellant.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by Samuel G. Thompson, Michael E. Weddington, and William H. Moss, for defendant-appellee.*

EAGLES, Judge.

### I

Defendants moved to dismiss the appeal before the trial court. That motion was denied, and defendants do not argue their cross assignments of error. That question is deemed abandoned; the appeal is properly before us. App. R. 28.

Plaintiffs failed to place any exceptions in the record. The court's findings of fact therefore are not reviewable. The appeal nevertheless brings forward the questions whether the court had jurisdiction of the subject matter and whether the judgment is supported by the findings and conclusions of law. App. R. 10(a).

### II

Plaintiffs assign as error the trial court's granting of defendant's motion to dismiss. They argue that an actual controversy exists between the parties as to their rights with respect to the promissory notes and that the court therefore had jurisdiction to grant relief pursuant to the Declaratory Judgment Act ("the Act"), and particularly under G.S. 1-254, which provides as follows:

> Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise, and obtain a declaration of rights, status, or other legal relations thereunder. A contract may be construed either before or after there has been a breach thereof.

### A

[1] While there is no state statutory requirement that there exist an actual controversy for jurisdiction under the Act, *compare* 28 U.S.C. 2201, our courts have uniformly imposed such a requirement. ". . . Courts have jurisdiction to render declaratory judgments only when the pleadings and evidence disclose the existence of an actual controversy between parties having adverse interests in the matter in dispute." *Gaston Bd. of Realtors, Inc. v. Harrison*, 311 N.C. 230, 234, 316 S.E. 2d 59, 61 (1984). The ex-

istence of an actual controversy is therefore "a jurisdictional pre-requisite" under the Act. *Adams v. N.C. Dept. of Natural and Economic Resources*, 295 N.C. 683, 703, 249 S.E. 2d 402, 414 (1978).

B

**[2, 3]** A genuine controversy must appear from the complaint *and* the record. *Gaston Realtors v. Harrison, supra; Nationwide Mut. Ins. Co. v. Roberts*, 261 N.C. 285, 134 S.E. 2d 654 (1964). There is no absolute requirement that the controversy exist at the time the pleadings are filed. Indeed, the Supreme Court in *Gaston Realtors* expressly considered both the pleadings and the evidence in resolving the genuine controversy issue. 311 N.C. at 235, 316 S.E. 2d at 62. The requirement of an existing controversy imposed by our courts is comparable to that under Federal Declaratory Judgment Act, 28 U.S.C. 2201. *See Town of Tryon v. Duke Power Co.*, 222 N.C. 200, 22 S.E. 2d 450 (1942). The U.S. Supreme Court has held that under that Act the controversy must exist at the time of hearing, not at the time of the complaint. *Golden v. Zwickler*, 394 U.S. 103, 22 L.Ed. 2d 113, 89 S.Ct. 956 (1969). This rule is usually applied to render moot controversies which have been resolved between the filing of the complaint and time of hearing. *Id.; Mailer v. Zolotow*, 380 F. Supp. 894 (S.D.N.Y. 1974). In light of our liberal system of notice pleading, the ready availability of discovery, and the general philosophy of the Rules of Civil Procedure, we see no reason why the rule should not operate to allow consideration of any genuine controversy existing at any time after the pleadings are filed up to the time the motion to dismiss is ruled upon. *See* J. Sizemore, General Scope and Philosophy of the New Rules, 5 Wake Forest Int. L. Rev. 1, 12-16 (1969). For us to require that the complaint on its face show the controversy and that subsequent discovery be ignored, would lead to judicial inefficiencies and wasteful results based on technicality that the new rules were designed to avoid. *Id.* Here the complaint was filed in July 1983 and the hearing at which the complaint was dismissed took place in August 1984. In the interim, one superior court judge deferred decision on the justiciable controversy question; neither side argues here that this judge erred in not dismissing the complaint then. At this stage of the litigation, we must consider the entire record to determine if an actual controversy exists.

C

[4]   An actual controversy exists for purposes of the Act when litigation appears unavoidable. *Gaston Realtors, supra; N.C. Consumers Power, Inc. v. Duke Power Co.*, 285 N.C. 434, 206 S.E. 2d 178, *reh'g denied*, 286 N.C. 547 (1974). Mere apprehension or threat of litigation does not provide grounds for seeking a declaratory judgment. *Gaston Realtors; Newman Machine Co., Inc. v. Newman*, 2 N.C. App. 491, 163 S.E. 2d 279 (1968), *rev'd on other grounds*, 275 N.C. 189, 166 S.E. 2d 63 (1969). In *Gaston Realtors*, the Supreme Court held that a real estate board did not present a justiciable controversy regarding the legality of disciplinary action against one of its members, since the member had never actually stated he would file suit and had taken steps to comply with the board's action to resolve the underlying disciplinary proceeding. However, it is not necessary that the parties wait until the lawsuit is immediately imminent or risk forfeiture to have a justiciable controversy. *See Bland v. City of Wilmington*, 278 N.C. 657, 180 S.E. 2d 813 (1971). The Act, after all, requires liberal construction in favor of resolving uncertainties. *Coleman v. Edwards*, 70 N.C. App. 206, 318 S.E. 2d 899 (1984); *see also Lide v. Mears*, 231 N.C. 111, 56 S.E. 2d 404 (1949) (construing with "extreme liberality"). In *Coleman*, we held that a justiciable controversy was presented concerning the effect of a lessor's death on the lease and entitlement to the rent, even though no party had made formal demand for the rent money and plaintiffs did not allege a claim to immediate possession of the property. In *Baucom's Nursery Co. v. Mecklenburg County*, 62 N.C. App. 396, 303 S.E. 2d 236 (1983), we entertained an appeal regarding the applicability of a zoning ordinance to certain activities, where there was no evidence of any enforcement action, current or impending, and no evidence of any planned change of use. In *American Mfrs. Mut. Ins. Co. v. Ingram*, 43 N.C. App. 621, 260 S.E. 2d 120 (1979), *rev'd on other grounds*, 301 N.C. 138, 271 S.E. 2d 46 (1980), *reh'g denied*, 301 N.C. 728, 274 S.E. 2d 227 (1981), we held that there was no reason to deny plaintiff insurance company a declaratory ruling on the validity of certain binders. We reached that result even though no claims had arisen on the binders, and there was no strong likelihood that claims would arise. Rather, the principal reason for granting declaratory relief was to allow plaintiff to conduct its business properly, *i.e.*, to plan premium collection and

maintenance of reserves. The Supreme Court reversed on other grounds but did not address this question. 301 N.C. at 153, 271 S.E. 2d at 54.

## D

[5]   When compared with the cases cited, particularly *Ins. Co. v. Ingram*, we believe the pleadings and record in this case present sufficient controversy to invoke the jurisdiction of the court under the Act. The court did find that plaintiffs had never requested "written consent" from defendant. However, plaintiffs repeatedly requested consent from defendant, who consistently avoided giving a definite answer. Their failure to ask for an answer "in writing" should not put them out of court. Because of the situation existing between the parties, the only kind of answer that could be of practical use to plaintiffs would be an answer in writing. The promissory note does not require that plaintiffs make their request in writing; it simply requires that plaintiffs have written consent. Plaintiffs' requests for consent to compete are adequate under the circumstances. The possibility that defendant might later consent to competition appears of little moment. The mere possibility of waiver of the disputed contractual provision ought not defeat jurisdiction under the Declaratory Judgment Act.

The trial court also based its decision on the fact that plaintiffs had advanced no specific plans for competition with defendant. While specific plans might have sharpened the focus of the issues, they were not essential to a justiciable controversy. We note that competition in the news business, particularly for advertising revenue, is often fierce. *See McGuire v. Times Mirror Co.*, 405 F. Supp. 57 (C.D. Calif. 1975) (discussing effect of competition for advertising revenue on circulation and overall costs); *Levitch v. Columbia Broadcasting System, Inc.*, 495 F. Supp. 649 (S.D.N.Y. 1980) (discussing imitation of successful ideas in advertising), *aff'd*, 697 F. 2d 495 (2d Cir. 1983). We are aware of nothing in this record that would prevent defendant from pre-empting any specific plans divulged by plaintiffs by beginning similar competitive operations first. In light of this competitive atmosphere, a declaration of the effect of the note will have a decided impact on plaintiffs' financial position and their ability to raise funds to begin competition as they think most advantageous. We note that

plaintiffs have maintained their memberships in press associations and have taken an option on office space in Lumberton. They have repeatedly sought from defendant general permission to compete. We do not think it was absolutely essential in this business situation that they divulge their specific plans. The present record discloses sufficient controversy, which this litigation should resolve, to invoke the court's jurisdiction under the Act. The trial court's ruling to the contrary was erroneous as a matter of law.

### III

Because of its ruling dismissing for lack of a justiciable controversy, the trial court did not reach the merits. The only other ruling brought forward by this appeal is the denial of plaintiff's motion for summary judgment. The court denied summary judgment expressly and solely on the grounds that more evidence needed to be produced on the question of whether a justiciable controversy existed. There has been no ruling whatsoever on the merits of this case. As yet, defendant has presented no evidence, and asks that we remand for that purpose. At this stage in the litigation and in light of the novel questions presented, we agree. The case is remanded to the Superior Court of Robeson County for further proceedings.

Reversed and remanded.

Judge MARTIN concurs.

Chief Judge HEDRICK dissents.

Chief Judge HEDRICK dissenting.

Plaintiffs must allege sufficient facts to show the existence of an actual or justiciable controversy to invoke the jurisdiction of the court under the Declaratory Judgment Act. *Kirkman v. Kirkman*, 42 N.C. App. 173, 256 S.E. 2d 264, *disc. rev. denied*, 298 N.C. 297, 259 S.E. 2d 300 (1979). A contract cannot form the basis for jurisdiction pursuant to G.S. 1-254 absent an actual controversy about legal rights and liabilities arising under the contract. *Gaston Bd. of Realtors, Inc. v. Harrison*, 311 N.C. 230, 316 S.E. 2d 59 (1984).

While the Declaratory Judgment Act is to be liberally construed, it is not without limitation, *Kirkman v. Kirkman*, 42 N.C. App. 173, 256 S.E. 2d 264 (1979). In *Lide v. Mears*, 231 N.C. 111, 56 S.E. 2d 404 (1949), our Supreme Court discussed the scope of this Act as follows:

> . . . it does not undertake to convert judicial tribunals into counsellors and impose upon them the duty of giving advisory opinions to any parties who may come into court and ask for either academic enlightment or practical guidance concerning their legal affairs. . . . This observation may be stated in the vernacular in this wise: The Uniform Declaratory Judgment Act does not license litigants to fish in judicial ponds for legal advice.

*Id.* at 117, 56 S.E. 2d at 409.

In *Consumer Power v. Power Co.*, 285 N.C. 434, 206 S.E. 2d 178 (1974), the Supreme Court noted that although it is not necessary that one party have an actual right of action against another to satisfy the Act's jurisdictional requirement of an actual controversy, it is necessary that litigation appears unavoidable. It was clear in that case that the defendant would have opposed any effort by anyone to operate an electric generation and transmission system in competition with it. Since the complaint revealed that there was no practical certainty that plaintiffs had the power or capacity to perform the acts which would inevitably create a controversy with defendant, the court held that it did not appear that litigation between the parties was unavoidable.

In the present case, litigation between the parties does not appear unavoidable. The complaint discloses that there is no certainty that plaintiffs will engage in acts which the promissory note purports to prohibit, since they allege that their intent to enter the newspaper business is conditioned on a variety of factors other than their rights and liabilities under the note. Additionally, the note seeks to prevent competition against defendant without its prior written consent and plaintiffs did not allege that they requested and were denied such approval. Plaintiffs' argument that an actual controversy exists because Mr. Park, president of defendant, declined to give them permission to enter the newspaper business in response to hypothetical questions posed in his deposition and at trial, is without merit. Plaintiffs' questions were an attempt to create a justiciable issue after the com-

plaint had been filed, and the determination of whether the court had jurisdiction to enter a declaratory judgment in a particular proceeding is made from the pleadings filed in the cause. *See, Kirkman v. Kirkman*, 42 N.C. App. 173, 256 S.E. 2d 264 (1979). It is possible that defendant would consent to a request from plaintiffs to enter a specific aspect of the newspaper publishing business, and litigation between the parties would be unnecessary.

The facts here alleged present an abstract question and any decision from the trial court would have been purely advisory. Plaintiffs have failed to allege sufficient facts to show the existence of an actual controversy with regard to the promissory note and thus I feel that the trial court properly dismissed the claim for lack of jurisdiction under the Declaratory Judgment Act.

For the foregoing reasons, I respectfully dissent and vote to affirm.